939 So.2d 298 (2006)
CLARA L. ROWLEY, Appellant,
v.
STATE OF FLORIDA, Appellee.
No. 4D05-1869.
District Court of Appeal of Florida, Fourth District.
October 18, 2006.
Michael H. Bloom of the Law Offices of Michael H. Bloom, Coconut Grove, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Diane F. Medley, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Clara Rowley appeals her conviction for fleeing and eluding a police officer, a third degree felony, contrary to section 316.1935(2), Florida Statutes (2004). We affirm the conviction.
She argues that the trial court erroneously restricted her cross-examination of a police officer on a matter that went to his bias. However, the defense failed to proffer what the excluded evidence would have revealed or how it was relevant to this case. The absence of such a proffer precludes our review of the restriction of cross-examination.
Mrs. Rowley is a 71-year-old grandmother who has been married for 55 years. She has five children, fifteen grandchildren and three great-grandchildren. After attending mass and stopping for pancakes at Wal-Mart, Mrs. Rowley's car was stopped by Officer Robert Kyzer of the Sebastian Police Department for a broken taillight, an infraction for which Kyzer intended to give Mrs. Rowley a warning. This innocuous traffic stop escalated into something more and ended with Mrs. Rowley's arrest, at another location, following a low-speed chase. Mrs. Rowley's defense at trial was that the conduct of police officers at the traffic stop gave rise to the defense of necessity, which justified her leaving the scene of the traffic stop contrary to the direction of the officers, and driving down the road with two police cars in pursuit.
During a proffer, defense counsel questioned Officer Kyzer about something called the "Pomeroy matter" as follows:
Q: And in fact, isn't it true, that the Sebastian Police Department has already had one difficulty with Mr. Pomeroy?
A: No.
Q: You weren't involved in the Pomeroy matter?
A: Yes.
Q: Mr. Pomeroy died; isn't that right?
A: Yes.
Q: And isn't it true that you didn't want to have that happen again?
A: No.
Q: No, you wanted it to happen again?
A: No.
Q: So in fact because you have a seventy-one-year-old woman who'd been injured by the police[1] and because we have Mr. Pomeroy's family suing the Sebastian Police Department and you in particular that you concocted this situation where she committed this felony of fleeing and attempting to elude in order to protect yourself and the Sebastian Police Department.
A: No, that's absolutely incorrect.
As Mrs. Rowley argues on appeal, case law recognizes that exploration of bias in a criminal case allows for cross-examination into an "officer's use of excessive force in other cases," "[w]here there is an issue of whether or not excessive force was used by a law enforcement officer" in the case at hand. Michael v. State, 884 So. 2d 83, 85 (Fla. 2d DCA 2004); see also Hinojosa v. State, 857 So. 2d 308, 310 (Fla. 2d DCA 2003); Mendez v. State, 412 So. 2d 965, 966 (Fla. 2d DCA 1982); Henry v. State, 688 So. 2d 963, 965-66 (Fla. 1st DCA 1997); Ivester v. State, 398 So. 2d 926 (Fla. 1st DCA 1981). The existence of other complaints about an officer provide a motive to color testimony "to avoid another complaint which could [lead] to disciplinary action" or another lawsuit. Michael, 884 So. 2d at 85. Thus, as the second district wrote in Mendez, evidence of an officer's prior suspensions for excessive force "would have provided the jury with a highly plausible motive for [the officer's] misrepresentation of the true facts surrounding the shooting incident" in that case. 412 So. 2d at 966.
Defense counsel's proffer failed to demonstrate that cross-examination was appropriate under the Michael, Henry, and Mendez line of cases. The proffer established only that the Sebastian Police Department had a "matter" with Mr. Pomeroy and that Pomeroy died. The proffer failed to specify how, if at all,[2] Officer Kyzer was involved in the "Pomeroy matter," so that the trial court was alerted to the Michael, Henry, and Mendez basis for cross-examination. Neither by his questions to Kyzer nor by an offer of proof did defense counsel establish facts that would have justified the proposed cross-examination. The absence of an adequate proffer precludes our review of the alleged error. See § 90.104(1)(b), Fla. Stat. (2004); A. McD. v. State, 422 So. 2d 336, 337-38 (Fla. 3d DCA 1982).
Even assuming that the trial judge erroneously restricted cross-examination, we find such error in this case to be harmless.
When rejecting the police officers' version of the facts and viewing Mrs. Rowley's testimony in the most favorable light, the facts do not support the defense of necessity. Mrs. Rowley testified that: (1) after stopping her car for having a broken taillight, the officer took a long time to write her a warning; (2) during the process of writing the warning, the officer returned to the car and asked her the color of her eyes; (3) when she got out of her car, two officers, "yelling as loudly as they could" and "bellowing in [her] face," told her to get back in the car; (4) a police dog was barking inside the patrol car, which had its emergency lights flashing; (5) one officer told Mrs. Rowley, "[w]e have had just about enough of you;" (6) it was night; (7) once she informed the officers that she was "terribly afraid and I want to go home, I'm going home," the officers "were walking towards the van and they were screaming no, you're not, no, you're not, over and over. And I said but I am, I am leaving. And they said no, you're not. And I, then I, then I said, well of course I am going home." Stating that she was, "very aware of driving very carefully," Mrs. Rowley then started her car and left the scene of the stop, leading several police cars, with sirens and lights flashing, on a low speed chase."
There was no dispute at trial that Mrs. Rowley violated section 316.1935(2); she willfully fled or attempted to elude a law enforcement officer who was "in a jurisdictionally marked vehicle with sirens and lights activated." Anderson v. State, 780 So. 2d 1012, 1014 (Fla. 4th DCA 2001). The only defense to the charge was necessity, also called duress, compulsion, or coercion. See Mickel v. State, 929 So. 2d 1192, 1196 n. 2 (Fla. 4th DCA 2006). The trial court charged the jury on this defense. Mrs. Rowley's version of the facts do not rise to the level required to make out the defense. See Driggers v. State, 917 So. 2d 329, 331 (Fla. 5th DCA 2005); Fla. Std. Jury Instr. (Crim.) 3.6(k).
Affirmed.
GUNTHER, J., concurs.
FARMER, J., dissents with opinion.
Not final until disposition of timely filed motion for rehearing.
FARMER, J., dissenting.
Late one summer night, a 71 year-old woman was stopped by an officer with the canine[3] unit of the Sebastian Police Department as a matter of courtesy to advise her that the license tag light was out. That "courtesy" ended nearly an hour later with the woman being pulled from her auto, arrested, handcuffed and charged with the serious felony of fleeing and eluding an officer.
Just how did this seemingly improbable episode evolve? Is the officer's version of events reliable to prove guilt beyond a reasonable doubt? How might his direct testimony hold up under a full cross examination as to possible biases, prejudices, or ulterior motives? Well, the world will never know because when the cross examination of the officer at trial finally reached the subject of a reason to color, exaggerate or even misrepresent events, it was cut off before it could begin. The exclusion of this standard line of cross examination is the reason for this appeal.
Although the officer first said he deemed it a courtesy stop, he testified that he decided to issue the lady a written warning. But when she began to leave her vehicle to inspect her tag light, the officer physically restrained her from doing so, explaining that he "laid hands on her" to carry out police policy of keeping people in their vehicles "for their own safety and protection." Tellingly, he did not suggest what she needed such protection from. Meanwhile the officer's dog, Gunner, incessantly barked at defendant from his vantage in the police vehicle immediately behind.
After 15-25 minutes of being detained inside her auto while he prepared a written warning, the lady declined the officer's invitation to sign it. That refusal led the officer again to change his mind, this time to convert the written warning into a formal citation of a civil traffic infraction. Defendant then drove off, allegedly in spite of the officer's claimed warning not to leave. She was followed by the canine officer and (now) a backup police unit, during which she did not speed or violate any traffic laws. After 5-10 minutes, the convoy of officers ultimately pulled next to her in a parking lot, took her from her vehicle, arrested and handcuffed her, and "assisted her in sitting on the ground." Formal felony charges were later filed. Trial came in due course.
At trial, defense counsel sought to show that the canine officer had unreasonably detained her at night by the side of the road for an excessive period of time; that the continued barking by his police dog had frightened her; that the officer was "belligerent"; that he "manhandled" her; and that he had manufactured her arrest on felony charges to protect himself and the Sebastian Police Department from civil liability resulting from his handling of the incident. The excluded line of cross examination concerned something called the Pomeroy matter, a prior incident involving the same officer. The Pomeroy incident is said to have resulted in the death of the detainee from excessive force and a consequent civil suit for damages against the officer and the City. In sustaining the State's objection to any questions on the subject, the Judge explained:
"That certainly has no relevance to this case. . . . And that would end up being a trial within the trial. That testimony about this Mr. Pomeroy issue is not relevant. The prejudicial value substantially outweighs any probative value, if any. Frankly, there isn't any. . . . "
From her conviction, we now have the case.
In Davis v. Alaska, 415 U.S. 308 (1974), the Court dealt with the constitutional right of the defendant in a criminal trial to cross examine the state's key witnesses against him. The Court explained:
"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution `to be confronted with the witnesses against him.' . . . `Our cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination.' Professor Wigmore stated:
`The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.'
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. . . . A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is `always relevant as discrediting the witness and affecting the weight of his testimony.' We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. [e.s., c.o.]
415 U.S. at 315-17. In spite of these controlling principles, the trial judge deemed defense counsel's attempt to explore the Pomeroy matter to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand" not important enough to allow.
In Delaware v. Van Arsdall, 475 U.S. 673 (1986), the Court repeated the Davis holdings. Critical to the present appeal, the Court added that the trial judge does not have discretion to prohibit all questioning on a relevant line of inquiry. 475 U.S. at 679-80. The Court made clear that a total prohibition of a subject conceivably affecting the motives of the witness to testify in a particular way results in a violation of the Confrontation Clause of the Sixth Amendment. Id.; see also Olden v. Kentucky, 488 U.S. 227, 231-32 (1988) (same); Gibson v. State, 661 So.2d 288, 291 (Fla. 1995) ("Inherent within this right is a defendant's right to expose a witness's motivation in testifying because it is `the principal means by which the believability of a witness and the truth of his testimony are tested.'"); Coco v. State, 62 So.2d 892, 895 (Fla. 1953) ("The constitutional right of cross-examination is not a mere privilege to be granted or withheld at the discretion of the court, but a substantive right possessed by the accused"). The Court held that the discretion reposed in the trial judge is to protect against harassment, prejudice, confusion, and repetitive or marginally relevant questions, or to insure the safety of a witness, by imposing "reasonable limits" on such cross examination. Van Arsdall, 475 U.S. at 679.
In sum, the only authority reposed in the trial judge here is for a very narrow purpose. In the plain words of Davis, it is solely for the purpose of "preclud[ing] repetitive and unduly harassing interrogation." 415 U.S. at 316. It is not discretion to bar defense counsel entirely from dipping a toe in the water on a specific subject that could possibly discredit the testimony of the witness. See, id. Discretion is instead to determine only if it is time for counsel to leave the water. In spite of the clear holding in Davis and Van Arsdall, here the trial judge barred the entire line of questioning about the Pomeroy matter on the grounds that it would not be relevant and that some unexplained "prejudice" would exceed any probative value.
Neither ground passes even superficial scrutiny. As for a lack of relevance to sustain the exclusion, the constitutional rule is that this kind of cross examination is classically relevant. Davis, 415 U.S. at 316 ("partiality of a witness is . . . `always relevant [e.s.] as discrediting the witness and affecting the weight of his testimony.' "); see also Johnston v. State, 863 So.2d 271, 278 (Fla. 2003) ("The trial court's discretion is limited by the rules of evidence."). As for prejudice being greater than proof, the notion comes from a Florida Statute of doubtful bearing, namely section 90.403.[4] In Pardo v. State, 596 So.2d 665 (Fla. 1992), the court explained that the concerns reposed in section 90.403 are those underlying the common law rule barring proof of prior consistent statements. Under what theory would the "probative" weight of constitutionally required cross examination lie within the section 90.403 powers of the trial judge to exclude unfairly prejudicial testimony that would be contrary to the state's case?
I find it very difficult to comprehend the reliance on the concept of prejudice being weightier than cross examination being a proper basis to bar the subject of the Pomeroy matter entirely.[5] The section 90.403 terminology refers to unfair prejudice.[6] The essential purpose of cross examination is to expose something discrediting the reliability of a witness's testimony. Because of this purpose, discrediting is not what unfair prejudice means. Yet apparently the trial judge's reliance on prejudice was precisely that. In the only applicable sense of the word, the State cannot really be deemed prejudiced by cross examination turning up doubts about the accuracy or truth of a witness's testimony.
It bears repeating that the State of Florida's only interest in any criminal prosecution is that justice be done. Justice Jackson once observed that the state can have no valid concern in interposing an obstacle to cross examination to find the truth "unless it is interested in convicting accused parties on the testimony of untrustworthy persons." Gordon v. United States, 344 U.S. 314, 319 (1953) (quoting from People v. Davis, 18 N.W. 362, 363-64 (Mich. 1884)). The Michigan court had gone on to elaborate:
"But surely the state has no such interest [in convictions based on testimony of unworthy persons]; its interest is that accused parties shall be acquitted, unless upon all the facts they are seen to be guilty; and if there shall be in the possession of any of its officers information that can legitimately tend to overthrow the case made for the prosecution, or to show that it is unworthy of credence, the defense should be given the benefit of it."
Id. The truth is the State is never unfairly prejudiced by the full truthnot even when it results in an acquittal.
The crucial thing about cross examination is that its effects are for the jury, not judges.[7] It is the jury who must ultimately weigh and apply any truth-giving valueits real effect, prejudicial or otherwise. As Davis and Van Arsdall expounded, trial judges do not have the authority under the Confrontation Clause of the Sixth Amendment to preclude cross examination on the grounds that it is really too discreditingor, as here, not discrediting enough. If this kind of cross examination is always relevant and admissible to carry out the essential right of the accused to confront witnesses, on what theory could its adverse effect on the State's case ever outweigh its discrediting value? No state statute, certainly not section 90.403, can overpower the Confrontation Clause. Frankly I doubt that section 90.403 has any application to this kind of cross examination except to determine whether it has become cumulative or harassing.[8] In my opinion, the stated rationale for exclusion is legally incoherent.
The State depends on Slocum v. State, 757 So.2d 1246 (Fla. 4th DCA 2000), to rescue its position. Slocum did indeed read section 90.608 to exclude cross examination of a police officer about his interrogation technique of defendant, as compared with the technique he had used on a suspect in another case initially convicted but later determined to be innocent. As with this case, Slocum is a no-toe-in-the-water decision, rather than a time-to-get-out-of-the-water ruling and is therefore directly in conflict with Davis and Van Arsdall, both of which make that distinction.[9]Slocum is also contrary to Gibson which interpreted section 90.608 to liberally permit cross examination of possible motives for lying. Compare Slocum, 757 So.2d at 1250, with Gibson, 661 So.2d at 291.
Slocum is unworthy for yet another reason. It resorts to the shibboleth that such an inquiry inescapably would have "needlessly lengthened" the trial, "obscure[d] the discovery of truth," and "sunk this trial into litigation over the myriad details of a completely unrelated homicide." 757 So.2d at 1251. Similarly in this case, the trial judge referred to cross examination on the Pomeroy matter as unavoidably becoming "a trial within a trial." Precisely how or whyor even whetherthat possibility would necessarily occur is not explained in Slocum or here. Actually the short answer to this familiar attempt at last-ditch justification was given by Justice Holmes, and it is this: not while a court sits![10] Such undesirable consequences will occur only if judges allow them. Would the trial judge have departed the courtroom during the cross examination? Would the judge refuse to make proper determinations as to the length and breadth of such cross examination? Are trial judges so incapable of recognizing reasonable limits and apprehending when it has become time to stop repetitive or harassing questioning?
Slocum lies outside constitutional requirements for confrontation by cross examination as to possible biases or motives of adverse state witnesses in a criminal trial. Its rationale directly conflicts with decisions of this court in Mitchell v. State, 862 So.2d 908 (Fla. 4th DCA 2003); Shaw v. State, 831 So.2d 772 (Fla. 4th DCA 2002); Barows v. State, 805 So.2d 120, 122 (Fla. 4th DCA 2002); Purcell v. State, 735 So.2d 579, 581 (Fla. 4th DCA 1999). Green v. State, 691 So.2d 49 (Fla. 4th DCA 1997); Caton v. State, 597 So.2d 412 (Fla. 4th DCA 1992); Auchmuty v. State, 594 So.2d 859 (Fla. 4th DCA 1992); Jones v. State, 577 So.2d 606 (Fla. 4th DCA 1991). It conflicts with decisions in Gibson v. State, 661 So.2d 288 (Fla. 1995), and Chadwick v. State, 680 So.2d 567, 568 (Fla. 1st DCA 1996). It conflicts with Davis v. Alaska and Delaware v. Van Arsdall. I propose that we, ourselves, recede from this self-inflicted wound and conform our own precedents to constitutional requirements, saving the Supremes the exertion.
As I have suggested, the circumstances of this case raise many questions, the answers to which could lead to doubts about the justice of a conviction. Why is an officer on canine duty stopping anyone late at night for a faulty license tag light? If it were merely a non-criminal traffic courtesy stop, why can't she get out of her car to check her light? In this non-criminal setting, under what authority is she being confined to her car? If just a courtesy stop, why issue a formal written warning? Why did it take so long to issue the warning? Why is she being required to sign a warning to go on her way? If the situation indicated just a warning, what is the reason for issuing a citation? Why should a non-criminal traffic stop result in physically laying hands on her? Why are multiple police units involved with a senior citizen driver with a malfunctioning tag light? Under the circumstances was it really unreasonable that defendant felt impelled to leave? If the jury knew of the canine officer's history of excessive force and his knack of failing to exercise common sense, would they have convicted defendant of a felony under the facts of this case?
The constitutional way to illuminate these issues was to allow the kind of cross examination required by the Confrontation Clause to work its justice-liberating effects. I would reverse so that can take place.
NOTES
[1] There was no dispute that Mrs. Rowley suffered no physical injury at the initial traffic stop.
[2] The officer answered "Yes" to the question "You weren't involved in the Pomeroy matter?," which suggests that he was not involved.
[3] Which the parties homophonically refer to as "K-9" duty.
[4] § 90.403, Fla. Stat. (2005) ("Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.").
[5] In this case we can rule out the idea of cumulative evidence because the judge ruled the entire line of questioning out.
[6] § 90.403, Fla. Stat. (2005) (if its probative value is substantially outweighed by the danger of unfair [e.s.] prejudice).
[7] As a basis for upholding the trial judge, the probative efficacy of the proffer is meaningless. This proffer's only purpose was to show there was an incident involving this same officer involving accusations of excessive force and a suit against him and the city. Its role was to briefly illuminate the proposed subject to show that it would be traditional cross examination. The proffer was not to show Judges that, if allowed, the cross examination would probably succeed in discrediting the witness.

While it is apparent that the brief sketch of testimony elicited by the proffer failed to move either the trial judge or two appellate judges, it is really not for them to weigh or gauge. In deciding whether to exclude evidence, judges are not authorized to decide that a proposed cross examination would end up failing to discredit. Yet essentially that is the rationalization of the affirmance. Frankly, given the improbable facts of this case, I doubt anyone can authoritatively say beyond a reasonable doubt that this testimony would have had no effect on the finder of fact and that its exclusion was harmless. Goodwin v. State, 751 So.2d 537, 540 (Fla.1999) ("The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or . . . that there is no reasonable possibility that the error contributed to the conviction.").
[8] In Coolen v. State, 696 So.2d 738 (Fla. 1997), the court posited in dicta that evidence of bias is subject to being excluded when unfair prejudice to a witness exceeds probative value. But in context the court merely upheld a reasonable limitation into the discrediting subject, notas herea total ban on it. 696 So.2d at 743 ("Through cross-examination, the jury learned that Kellar had been criminally charged in another incident that occurred after her husband's death, that she was currently in a pretrial intervention program, and that the charges against her would be dismissed if she successfully completed that program. Thus, Kellar's bias was established and the court did not err by limiting cross-examination into the details of the charge against her.").
[9] Slocum also relies on the very same rationale of prejudice overwhelming the probative naturea rationale that I have just shown to be legally untenable.
[10] Panhandle Oil Co. v. Mississippi ex rel. Knox, 277 U.S. 218, 223 (1928) (Holmes, J., dissenting from the Court's decision to strike down state taxes on sales to the United States government on the basis that the power of the States to tax the federal government would inevitably lead to its destruction). The decision was later overruled in Alabama v. King & Boozer, 314 U.S. 1 (1941).