[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 13, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13218
Non-Argument Calendar

_____

D. C. Docket No. 06-00686-CV-J-33-MCR

MELANIE WILLIAMS,

Plaintiff-Appellee.

versus

MATTHEW SIRMONS,
JAMES MILLS,

Defendants-Appellants,

SHERIFF JOHN RUTHERFORD
of the Jacksonville Sheriff's Office,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 13, 2009)**

Before BIRCH, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Melanie Williams brought suit against Deputy Matthew Sirmons, Deputy James Mills, and Sheriff John Rutherford of the Jacksonville Sheriff's Office, alleging, inter alia, that Mills and Sirmons used excessive force against her in violation of 42 U.S.C. § 1983. Deputies Mills and Sirmons moved for summary judgment, arguing that they were entitled to the defense of qualified immunity. The district court denied the deputies' motion. Sirmons and Mills appeal.

As an initial matter, we note that a district court's order denying a defendant's motion for summary judgment grounded on a claim of qualified immunity is immediately appealable despite there being disputed issues of fact, unless the only disputed issue is whether the evidence could support a finding that particular conduct occurred. Behrens v. Pelletier, 516 U.S. 299, 312 (1996). Accordingly, we have jurisdiction to review the district court's legal analysis in denying qualified immunity, even though the district court noted that material issues of fact remain. Cottrell v. Coldwell, 85 F.3d 1480, 1485 (11th Cir. 1996).

## BACKGROUND

The parties dispute several key facts in this case; however, in determining the facts for summary judgment purposes, we, like the district court, are required to

view the evidence in the light most favorable to the nonmoving party.  Celotex

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Under this standard, the evidence

supports the following facts:

In the early hours of May 8, 2005, Melanie Williams, then seven and a half

months pregnant with her first child, noticed that she had begun to bleed vaginally.

Concerned, she began to drive herself to St. Vincent's Medical Center.  En route,

Williams ran a red light.  Less than one mile from the hospital, Williams pulled

over when signaled to stop by Deputies Sirmons and Mills.  After Sirmons

approached her car, Williams explained to him that she was pregnant, bleeding,

and on her way to the hospital.  Sirmons appeared unconcerned and requested

Williams' drivers' license and proof of insurance and inquired whether she owned

the car she was driving.  After receiving the requested documents, Sirmons

returned to his patrol car to verify her identity and issue a traffic citation.  Williams

then fled from the stop in her vehicle.  Mills and Sirmons pursued Williams with

their lights and sirens on.

Williams drove directly to the hospital's emergency vehicle bay with

Sirmons and Mills close behind.  As Williams exited her car, Sirmons grabbed her

arm and told her that she was going to jail.  Williams pulled free and ran towards

the emergency room yelling, "Help!  I'm pregnant and bleeding."  Williams

3

stopped at two locked doors in the emergency room, still calling out for help.

Sirmons caught up to Williams and wrapped his arms around her, causing them

both to fall to the floor. Sirmons dislocated his shoulder in the fall. Sirmons got

up, and Mills took Sirmons' place, kneeling atop the prone Williams while he

unhurriedly handcuffed her. All the while, Williams was struggling to stand up

and pleading with the deputy to get off her stomach because she was pregnant.

The deputies then arrested Williams.

Mills took Williams to the patrol car where he allowed her to be examined

by a nurse from the hospital. Thereafter, Williams was admitted to the hospital and

found to be bleeding vaginally and in premature labor. Her physicians successfully

staved off the premature labor and Williams was released from the hospital ten

days later.

Williams sued Sirmons and Mills under 42 U.S.C. § 1983 for alleged

violations of her Fourth Amendment rights during her arrest.[1] At the conclusion of

discovery, Sirmons and Mills moved for summary judgment, arguing that they

were entitled to qualified immunity because a reasonable officer could have

believed that there was probable cause for the arrest and that their use of de

---

[1] Williams also sued the deputies for malicious prosecution under state law and Sheriff Rutherford in his official capacity under § 1983 and for false arrest and battery under state law. These claims are not at issue in this appeal.

minimis force in arresting Williams was lawful and necessary under the circumstances. The district court denied the deputies' motion, finding that there was sufficient record evidence to justify the conclusion (1) that Williams' arrest was not founded upon probable cause and therefore any use of force was unauthorized and (2) that the force used was excessive under these circumstances. Accordingly, the district court found that the deputies were not entitled to the defense of qualified immunity as a matter of law.

## STANDARD OF REVIEW

We review a denial of a motion for summary judgment on qualified immunity grounds de novo, applying the same standard as required in the district court.[2] Cottrell, 85 F.3d at 1485. Summary judgment may be granted only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

## DISCUSSION

In a civil rights action under § 1983, the doctrine of qualified immunity might shield law enforcement officers from liability. See Harlow v. Fitzgerald,

---

[2] We note that "a defendant who does not win summary judgment on qualified immunity grounds may yet prevail on those grounds at or after trial on a motion for a judgment as a matter of law." Cottrell, 85 F.3d at 1487 (citing Kelly v. Curtis, 21 F.3d 1544, 1546 (11th Cir. 1994)). In this interlocutory appeal, we decide only whether the evidence, construed in the light most favorable to the plaintiff, required the district court to grant summary judgment on qualified immunity grounds.

457 U.S. 800, 818 (1982). Pursuant to this doctrine, law enforcement officers are entitled to qualified immunity so long as the alleged civil damages arose from the officers' discharge of their discretionary functions and their conduct "could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity does not provide a mere defense to liability, but rather a complete immunity from suit. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). Saucier instructs that summary judgment based on qualified immunity is appropriate at the earliest stages of litigation "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful." 533 U.S. at 202.

To claim qualified immunity, the officer first must show that he was acting within his discretionary authority when the alleged violation occurred. Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). Once this is shown, "the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007). To avoid summary judgment on the basis of qualified immunity, the plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252,

6

1264 (11th Cir. 2004).  These two inquiries must be followed in this order "to set forth principles which will become the basis for a [future] holding that a right is clearly established."  Scott v. Harris, 550 U.S. 372, 372 (2007) (alteration in original) (quotation marks omitted).

In this case, it is uncontested that Deputies Sirmons and Mills were acting pursuant to their discretionary authority in pursuing and arresting Williams.  Accordingly, the burden is upon Williams to show that the deputies violated her clearly established constitutional rights.  Williams calls her § 1983 claim one for "excessive force;" however, she actually alleges and presents evidence of two separate constitutional violations, which the district court fully addressed: (1) that the deputies did not have probable cause to arrest Williams and (2) that the deputies used excessive force in effecting her arrest.  Although both issues are framed under the rubric of excessive force, the probable-cause question is distinct from the excessive-force claim.  Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (holding that "a genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest").  Accordingly, we address these two alleged violations separately.

A.     *Probable Cause*

Pursuant to the Fourth Amendment, a police officer must have probable

7

cause to make a warrantless arrest. Rodriguez v. Farrell, 280 F.3d 1341, 1345 (11th Cir. 2002). Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime. United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002); Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998) (explaining that "the standard for determining the existence of probable cause is the same under both Florida and federal law"). "In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had 'arguable probable cause'" to effectuate the arrest. Davis v. Williams, 451 F.3d 759, 762-63 (11th Cir. 2006). Arguable probable cause exists where an objectively reasonable officer in the same circumstances and possessing the same knowledge as the officers effectuating the arrest could have believed that probable cause existed. See Thornton v. City of Macon, 132 F.3d 1395, 1399 (11th Cir. 1998).

In this case, it is undisputed that Sirmons and Mills lawfully stopped Williams for running a red light and that Williams drove away from the traffic stop before she was given permission to do so in violation of Florida Statute § 316.1935, which makes the willful attempt to flee or elude an officer a felony. Accordingly, based on their own observations, the deputies had probable cause to

8

believe Williams had committed a crime. Williams argues, however, that the deputies knew or should have known that she was justified in leaving the traffic stop due to her medical emergency, which provided an affirmative defense to her criminal conduct and removed the probable cause for her arrest.

Generally, in determining probable cause an arresting officer does not have to consider the validity of any possible defense. Baker v. McCollan, 443 U.S. 137, 145-46 (1979). An exception to the general rule exists, however, when the arresting officer actually has knowledge of facts and circumstances conclusively establishing an affirmative defense. In Estate of Dietrich v. Burrows, 167 F.3d 1007 (6th Cir. 1999), the Sixth Circuit considered whether the defendant police officers were entitled to a qualified immunity defense against a Fourth Amendment claim arising out of their arrest of the plaintiffs who claimed they had been arrested without probable cause. The court said: "The law has been clearly established since at least the Supreme Court's decision in Carroll v. United States, 267 U.S. 132, 162 (1925), that probable cause determinations involve an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest*." Id. (emphasis in original). Because the officers "had full knowledge of facts and circumstances that conclusively established, at the time of the . . . arrests, that the plaintiffs were justified – by statute – in carrying concealed weapons during their

9

work," the court concluded defendant police officers lacked probable cause to believe the plaintiffs violated the law. Dietrich, 167 F.3d at 1012. The court held therefore that the defendants were not entitled to qualified immunity. Id.

We are persuaded by Dietrich and agree that in determining whether probable cause to arrest exists, an officer must consider all facts and circumstances within that officer's knowledge, including facts and circumstances conclusively establishing an affirmative defense. See also Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) (explaining that probable cause is "judged not with clinical detachment but with a common sense view to the realities of normal life"); Painter v. Robertson, 185 F.3d 557, 571 (6th Cir. 1999) (stating that an officer "in assessing probable cause to effect an arrest, may not ignore information known to him which proves that the suspect is protected by an affirmative legal justification for his suspected criminal actions" ); Radich v. Goode, 886 F.2d 1391, 1396-97 (3d Cir. 1989) (assuming without deciding that in determining probable cause the arresting officers should consider facts establishing affirmative defenses). That is, if an officer has knowledge of facts and circumstances which establish an affirmative defense, he or she lacks probable cause to arrest, even when the facts and circumstances establish that the person meets all elements of the offense.

Under Florida law, necessity or duress is an affirmative defense to the crime

of fleeing or eluding a police officer, as codified under Fla. Stat. § 316.1935.  See

Rowley v. State, 939 So. 2d 298, 300 (Fla. Ct. App. 2006).  The elements of the

defense are (1) the defendant reasonably believed that a danger or emergency

existed that she did not intentionally cause; (2) the danger or emergency threatened

significant harm to her or a third person; (3) the threatened harm was real,

imminent, and impending; (4) the defendant had no reasonable means to avoid the

danger or emergency except by committing the crime; (5) the crime was committed

out of duress to avoid the danger or emergency; and (6) the harm the defendant

avoided outweighs the harm caused by committing the crime.  Driggers v. State,

917 So.2d 329, 331 (Fla. Ct. App. 2005).

In this case, the evidence taken in the light most favorable to Williams

establishes that the deputies knew from their interview with her during the traffic

stop that Williams was pregnant, bleeding, in distress, and on her way to the

hospital for emergency treatment.  The deputies, however, detained Williams in

order to write a traffic citation.  Immediately thereafter, the deputies observed

Williams drive away from the traffic stop without permission and proceed directly

to a hospital less than one mile away, where she exited her car, ran towards the

emergency room, and called out, "Help!  I'm pregnant and bleeding."  Because

they followed her directly from the traffic stop where she claimed to need medical

11

attention to the hospital where she immediately asked for help, the deputies should have known that Williams was not acting willfully to flee officers; rather, she was acting under necessity.  A reasonable officer would have known, given this particular set of circumstances, that Williams' flight from the traffic stop was justified by the affirmative defense of necessity or duress.  For this reason, the deputies lacked arguable – much less actual – probable cause to arrest, even though the circumstances established that Williams met all elements of the offense of fleeing or eluding a police officer.  The deputies, therefore, are not entitled to the defense of qualified immunity as a matter of law for Williams' claim that the arrest was unsupported by probable cause and the district court properly denied summary judgment on this ground.

If no probable cause authorizes an arrest, *any* use of force to effectuate the unlawful arrest is a violation of the Fourth Amendment.  Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1331-33 (11th Cir. 2006); Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008) (holding that although the use of force below a de minimis threshold ordinarily will not be actionable, even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect).  This rule makes sense because if a stop or arrest is illegal, "then there is no basis for any threat or any use of force, and an excessive force claim would

12

always arise but only collaterally from the illegal stop or arrest claim." Jackson v. Sauls, 206 F.3d 1156, 1170-71 (11th Cir. 2000). A plaintiff's damages for unlawful arrest, therefore, include damages for any injury, pain and suffering, and mental anguish caused by the force used to effect that false arrest, regardless of whether the force would have been reasonable or excessive had there been probable cause. Williamson v. Mills, 65 F.3d 155, 158-59 (11th Cir. 1995). Accordingly, to the extent Williams asserts that the force was excessive as unjustified by probable cause, this claim is subsumed into and included within her unlawful arrest claim. Id.

C.   *Excessive Force*[3]

Pursuant to the Fourth Amendment, an officer may not use excessive force in the course of a lawful arrest. Graham v. Connor, 490 U.S. 386, 388, 394-95 (1989). Likewise, a police officer with the ability to do so must intervene to stop another police officer's use of excessive force. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924-25 (11th Cir. 2000). The Supreme Court instructs that "[d]etermining whether the force used to effect a particular seizure is 'reasonable'

_____

[3] In addition to claiming that the use of force in her arrest was illegal as unsupported by probable cause, Williams also asserts as a discrete claim that the deputies' force was excessive, assuming her arrest was legal. Accordingly, although there are genuine issues of material fact as to whether probable cause existed for her arrest, we also address whether, assuming probable cause *did* exist, summary judgment based on qualified immunity is merited on Williams' excessive force claim.

13

under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. As in other Fourth Amendment contexts, the "reasonableness" inquiry in an excessive force case is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. In making this determination, we examine such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

It is well established in this circuit that where an arrest is supported by probable cause, the application of de minimis force as needed to effect the arrest, without more, will not support a claim for excessive force in violation of the Fourth Amendment. See Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000). This is the case because "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," Graham, 490 U.S. at 396, and we "recognize that the typical arrest involves some force and injury." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th

14

Cir. 2002). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. Graham, 490 U.S. at 396 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In this case, the evidence presented by Williams establishes that after Williams ran away from the deputies, Deputy Sirmons grabbed Williams from behind and pulled her to the ground and that Deputy Mills placed his knee on her back and put his weight upon her in order to handcuff her. Once Williams was restrained, no further force was used against her. Williams presents no evidence that she was injured as a result of the force; accordingly, we must characterize the use of force is as de minimis. See Rodriguez, 280 F.3d at 1351; Nolin, 207 F.3d at 1258 n.4.

The district court, applying the Graham factors, found that the need for force was slight because (1) the crime at issue was neither severe nor minor, (2) Williams objectively posed no threat to others, and (3) she was no longer fleeing because she was stopped by two locked doors. The district court further found that although a minimal amount of force and injury usually is objectively reasonable in the course of a lawful arrest, the force used in this case was nonetheless unreasonable. In reaching this conclusion, the district court relied upon Rodriguez v. Farrell, in which this court held that de minimis force was objectively reasonable

15

even when it resulted in serious injury, if the officer performing the arrest was unaware that the force would aggravate a preexisting medical condition. 280 F.3d at 1351. Extrapolating from this holding, the district court reasoned that de minimis force could be unreasonable if the officer was aware that an arrestee had a preexisting condition making her particularly susceptible to injury. Applying this logic to the facts of this case, the court found that because the need for force was slight and because the deputies knew from Williams' visibly pregnant body that she was "particularly vulnerable to what would otherwise be de minimis force," their use of even minimal force was unreasonable.

Reluctantly, we must disagree with the district court. First, we disagree with its analysis of the Graham factors. Although we agree with the district court that Williams did not objectively pose a threat to the officers or others, we conclude that eluding an officer – a felony under Florida law – is a very serious crime and that the deputies reasonably believed that Williams was resisting arrest and attempting to flee.[4] Under these circumstances and assuming that probable cause existed, the deputies were objectively reasonable in believing that the application of some degree of force was necessary to effect an arrest.

---

[4] We disagree with the district court's finding that because Williams had reached a set of locked doors, she was no longer fleeing. The evidence shows that Williams reached the doors only one or two seconds before Deputy Sirmons. Considered objectively, there was not enough time for Deputy Sirmons to know whether or not Williams was still attempting to flee.

16

Furthermore, we disagree with the district court's interpretation of our dicta in Rodriguez.  In that case, we suggest that where an officer knows of an arrestee's particular vulnerability and nonetheless applies a degree of force which causes serious injury, that force, under some circumstances, may be considered excessive, even if the force used would not have harmed a less vulnerable person.[5]  In other words, where an otherwise minimal amount of force causes serious injury and the officer *knew* it would cause serious injury, the application of such minimal force may not be objectively reasonable.  Nothing in Rodriguez suggests, however, that a minimal amount of force against a fragile arrestee which results in a *minimal* injury – of the sort that would be expected from a typical arrest of a resisting arrestee – is sufficient to support an excessive force claim.  Accordingly, our dicta in Rodriguez is not inconsistent with our conclusion in Nolin that evidence establishing only "*the minimal amount of force and injury* involved in a typical arrest" will not support a claim for excessive force.  207 F.3d at 1258 (emphasis added).

Unlike the arrestee in Rodriguez, who was seriously injured by an otherwise de minimis use of force, Williams was – miraculously – not harmed by the deputies' use of force in restraining her.  Accordingly, the exception suggested by

---

[5] This is not to suggest that an officer is never justified in using more than de minimis force against an arrestee with a known pre-existing condition.  Many factors may justify such a use of force so long as the potential for serious injury is balanced against the "countervailing governmental interests at stake."  Graham, 490 U.S. at 396.

17

our dicta in Rodriguez is not applicable in this case. We need not decide what amount of force is reasonable when an officer is aware that an arrestee is particularly susceptible to injury; however, we have no choice but to conclude that the force was reasonable where an officer causes no injuries in the course of effecting a lawful arrest, despite the fact that the arrestee is particularly susceptible to injury.[6]

For these reasons, although we agree with the district court that the deputies' behavior was reprehensible, we disagree that the evidence supports a finding that the force was excessive if there was probable cause for an arrest. Accordingly, we conclude that summary judgment is appropriate on Williams' excessive force claim.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order denying summary judgment on Williams' claim that her arrest violated the Fourth

---

[6] We note, however, that even a use of force that results in de minimis injuries may be excessive if the force is unreasonably applied to an unresisting arrestee *after* she has been restrained. See Lee v. Ferraro, 284 F.3d 1188, 1192 (11th Cir. 2002) (holding that, although the only injuries were de minimis bruises, officer's slamming arrestee's head onto the trunk of her car was objectively unreasonable where arrestee was unresisting and handcuffed). In this case, there is no evidence that any force was used against Williams once she was successfully restrained.

Amendment as unsupported by probable cause, **VACATE** the district court's order denying summary judgment on Williams' claim that the deputies used excessive force in a lawful arrest, and **REMAND** for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**