[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 15, 2011
JOHN LEY
CLERK

No. 11-10203
Non-Argument Calendar
_____

D.C. Docket No. 6:09-cv-00506-GAP-KRS

JAMES R. SADA,

Plaintiff - Appellant,

versus

CITY OF ALTAMONTE SPRINGS,
ROBERT PELTON,
BRIAN LYPSEY,
ROBERT SHAPIRO,
KRISTOFFOR TOMICH,
TROY ANTOLIN,

Defendants - Appellees,

JOHN DOES #1,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 15, 2011)

Before TJOFLAT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Paul Sada ("Sada") challenges the district court's order granting summary judgment on all of Sada's claims in favor of Defendants-Appellees City of Altamonte Springs ("City"), and Officers Robert Pelton ("Pelton"), Brian Lypsey ("Lypsey"), Robert Shapiro ("Shapiro"), Kristoffor Tomich ("Tomich"), and Troy Antolin ("Antolin"). Sada's complaint, arising out of his arrest by the Defendants, raised federal constitutional and state law causes of action against the City of Altamonte Springs and the officers involved in his arrest. On appeal, Sada argues that the district court erred in granting summary judgment to the Defendants because: (1) his arrest was not supported by probable cause; (2) the affirmative defense of Florida's parental physical discipline privilege precluded the legality of his arrest; and (3) he sustained damages from any negligence by the City in its training of its police force. After thorough review, we affirm.[1]

We review a district court's order granting summary judgment de novo. Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 556 (11th Cir. 1997). Summary

---

[1] Notwithstanding the "Statement of the Issues" in Sada's brief, which lists only three issues, Sada seems to challenge the district court's decision as to most of his claims on appeal. Any issue asserted by Sada which is not specifically addressed in this opinion is found to be without merit.

2

judgment is appropriate where there is no genuine issue of material fact. Id. "All evidence and reasonable factual inferences drawn therefrom are reviewed in the light most favorable to the party opposing the motion." Id. at 556-57 (quotations omitted). We, however, are not required to accept all factual characterizations and legal arguments of the nonmoving party. Beal v. Paramount Pictures Corp., 20 F.3d 454, 458-59 (11th Cir. 1994). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." Id. at 459.

The relevant facts, for purposes of summary judgment, are these. Sada and his son were engaged in a confrontation in a Sears store. Sada, unsuccessfully trying to convince his son to hang up his cellular phone, grabbed for the cellular phone, unintentionally striking his son in the process. Sada then angrily threw down his own cellular phone, exited the store, and remained in the Sears parking lot. His son sustained no visual physical injuries.

Thereafter, a Sears security guard called the police and communicated that there had been an altercation between a man and his son within the store, during which the man hit his son and threw a cellular phone in the direction of his son. The security guard also communicated that several Sears customers were themselves afraid of the father due to his aggressive behavior. Several Altamonte police officers

were dispatched to the scene. The call was dispatched with priority status, meaning "someone is being hurt." Upon arrival, Officer Pelton was directed towards Sada by several Sears employees. Sada, who was pacing in the Sears parking lot, screamed obscenities at the identifying Sears employees.

Officer Pelton approached Sada, who refused to stop pacing or speak about the incident. Pelton recalls Sada telling him, "That is my son and I'm pissed. I'm going to beat him down when I find him[, b]ut don't worry, I live in the county not the city." The officers, which ultimately included Officers Pelton, Antolin, Tomich, Shapiro and Lypsey, began an investigation of the incident.

The officers interviewed witnesses at the scene, obtaining five sworn witness statements. One eye witness recounted that Sada angrily "went after" and "socked" his son. A Sears employee reported that he saw Sada throw a cellular phone towards "a kid." Another employee said that Sada angrily shouted at his son, and that she saw Sada's son running out of the store with Sada running in pursuit. This employee also recalled that a customer had told her that Sada hit his son. Two Sears loss prevention associates reported that they had responded to a call about a man creating a disturbance and hitting his son. Two of the witnesses, a customer and an employee, told officers that they were afraid to leave the store on account of their recent

4

personal encounters with Sada. Further, that Sada was pacing, yelling, and cursing outside scared these two witnesses.

During the investigation, Sada mentioned to the officers that he knew the chief of police. Officer Lypsey privately indicated to Officer Torres, Sada's friend who was arranging the return of Sada's son to the Sears parking lot, that he was teaching Sada a lesson for "name dropping." Officer Antolin then arrested Sada in the Sears parking lot for battery and disorderly conduct. Sada was charged with disorderly conduct by the State Attorney, but was never charged with battery.

After all criminal charges against Sada were dismissed, Sada filed this suit in district court, alleging federal constitutional claims, and state claims for wrongful arrest, battery, slander, negligence, and intentional infliction of emotional distress. Upon motions by the Defendants for summary judgment, the district court agreed, rejecting Sada's federal constitutional claims and false imprisonment/false arrest and battery claims because there was both actual and arguable probable cause to arrest. The court found that even if probable cause was absent, Sada's claim of intentional infliction of emotional distress was not warranted, as the officers' actions were not sufficiently outrageous. Finally, the court found that Plaintiff "provided no evidence that the City's training policies, its supervision of the individual Defendants, or its

5

retention of Officer Lypsey caused [Sada] to suffer a false arrest or ill effect." This timely appeal followed.

First, we find no merit to Sada's claims that the arresting officers were not entitled to qualified immunity because (1) the totality of the circumstances did not yield probable cause or arguable probable cause that Sada's contact with his son was intentional and that (2) the officers were required to consider Florida's parental physical discipline privilege in their probable cause assessment, which should have precluded probable cause. The qualified immunity defense "balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009). To be eligible for qualified immunity, the Deputies must demonstrate that they were acting in the scope of their discretionary authority. O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004). "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) (quotation omitted).

Because it is undisputed that the arresting officers acted within their discretionary authority when they arrested Sada, the burden shifts to Sada to show

6

that qualified immunity should not apply. Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009). "In analyzing the applicability of qualified immunity, the Court has at its disposal a two-step process. Traditionally, a court first determines whether the officer's conduct amounted to a constitutional violation. Second, the court analyzes whether the right violated was clearly established at the time of the violation." Id. (citations omitted). Under Pearson, 129 S. Ct. at 818, however, courts are no longer required to conduct the qualified immunity analysis in this order; rather, we are "permitted to exercise [our] sound discretion" in deciding which prong of the inquiry to address first.

In analyzing whether a right was clearly established, we consider whether pre-existing law at the time of the alleged acts provided fair warning to Defendants that their actions were unconstitutional. See Hope v. Pelzer, 536 U.S. 730, 739-41 (2002). If it would be clear to any reasonable officer in the same situation that his actions were unconstitutional, then qualified immunity is not available, but if "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). The Supreme Court has declared that the test of "clearly established" law cannot apply at a high level of generality; instead, to deny qualified immunity, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence

7

more relevant, sense." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In applying the "clearly established" test, we turn to the precedent of the United States Supreme Court, the precedent of this Court, and to the highest court of the relevant state in interpreting and applying the law in similar circumstances. See Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 827 n.4 (11th Cir. 1997).

A warrantless arrest without probable cause violates the Fourth Amendment and provides the basis for a Section 1983 claim. See Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990). The existence of probable cause, however, is an absolute bar to such a claim. Id. at 1505-06. The standard for determining the existence of probable cause is the same under both Florida and federal law. Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998). Probable cause exists where "a reasonable man would have believed probable cause existed had he known all of the facts known by the officer." Id. (quotation and brackets omitted). "[T]he subjective belief of the arresting officer plays no role in a probable cause analysis under either Florida or federal law." Id. at 1434 n.11.

In this case, the officers had probable cause to arrest Sada for battery. Under Florida law, the crime of battery occurs when someone (1) actually and intentionally touches or strikes another person against the will of the other; or (2) intentionally causes bodily harm to another person. Fla. Stat. § 784.03. At the time of Sada's

arrest, the officers were aware of several pieces of information that suggested that he had committed battery, including five sworn witness statements describing the contact or Sada's temperament. For example, one witnesses claimed Sada had threatened his son, then angrily went after his son and "socked" him. And another swore to police that he had responded to an incident where a father had hit his son in the face and then thrown his cell phone across the store. Further, it is undisputed that Sada's son sprinted out of the Sears store after the incident. The five statements provide overlapping accounts of what occurred in the Sears stores, effectively corroborating each other. The only statements indicating that Sada had not committed a battery came from Sada himself and his son, the potentially intimidated victim of the purported battery. Sada's claim that the district court made credibility determinations in reaching this conclusion is baseless; even though their statements may have been conflicting, they are not sufficient to refute the officers' probable cause, which exists where "a reasonable man would have believed probable cause existed had he known all of the facts known by the officer." Rankin, 133 F.3d at 1433 (quotation and brackets omitted).

Moreover, contrary to Sada's suggestion, the officers' failure to seek video footage of the incident before the arrest and failure to ask a certain witness her opinion regarding Sada's intent does not render the investigation unreasonably

9

lacking.  In <u>Rankin</u>, officers arrested a teacher after a young student alleged she was sexually molested by that teacher and medical evidence indicated the young girl had been sexually molested.  <u>Id.</u> at 1437.  The plaintiff argued that the arresting officer should have examined the area where the molestation allegedly occurred and should have interviewed other teachers at the school.  <u>Id.</u>  Because the arresting officer interviewed the alleged victim's mother, her doctor, a psychologist who had been speaking with alleged victim, and the plaintiff himself, and because of the quality of the information, the court found the investigation reasonable.  <u>Id.</u>[2]  So too here -- the officers interviewed various witnesses, whose statements were corroborative, giving the officers more than enough for probable cause.

We also are unpersuaded by Appellant's claim that the arresting officers should have considered Florida's parental discipline privilege in their probable cause calculation.  Florida law privileges parental battery against a child so long as the contact is intended to be disciplinary and does not rise to the level of abuse.  <u>State v. McDonald</u>, 785 So. 2d 640, 647 (Fla. 2d DCA 2001).  However, "drawing a line

---

[2] This case is unlike <u>City of St. Petersburg v. Austrino</u>, 898 So. 2d 955 (Fla. 2d DCA 2004).  There, the officer had relied on the statement of one witness who had no direct knowledge of, or involvement in, the purported crime.  Here, however, the officers relied on the statements of numerous eye witnesses, there was little reason to doubt the eye witness statements, and other statements corroborated the eye witness statements.

between prohibited child abuse and permissible disciplinary corporal punishment is not an easy task." Id.

It does not appear, however, that officers are required to consider affirmative defenses in their probable cause calculations. Indeed, in Pickens v. Hollowell, we found probable cause when officers sought and executed an outstanding arrest warrant even though they were aware that there was a question as to whether the statute of limitations barred prosecution for the offense. 59 F.3d 1203, 1207 (11th Cir. 1995) ("Whether the statute of limitations bars a prosecution is a question of law. The officers properly deferred legal decisions to the district attorney.") (quotation omitted). Similarly, in Jordan v. Mosley, we held that officers need not consider the application of the apparent-authority affirmative defense in deciding whether to seek an arrest warrant. 487 F.3d 1350, 1356-57 (11th Cir. 2007) ("[W]e are not convinced -- and we need not decide -- that what must be seen as some kind of apparent-authority defense would have provided Plaintiff with a complete defense to the pertinent crime under Georgia law. Under the law of probable cause, no police officer had a duty to resolve this legal question before seeking out Plaintiff's arrest.").

Sada cites our unpublished decision in Williams v. Sirmons, 307 F. App'x 354 (11th Cir. 2009) (unpublished), where we held that, while "[g]enerally, in determining probable cause an arresting officer does not have to consider the validity of any

11

possible defense . . . , [a]n exception to the general rule exists . . . when the arresting officer actually has knowledge of facts and circumstances conclusively establishing an affirmative defense." Id. at 359. In Sirmons, we concluded that the officers there did not have probable cause to arrest the plaintiff for eluding police officers in her car because the officers, knowing that the plaintiff was pregnant, bleeding, and in distress, should have known that the affirmative defenses of necessity or duress would have precluded criminal liability. Id.

But even if we assume that officers are required to consider affirmative defenses in their probable cause calculations, the application of Florida's parental discipline privilege was not sufficiently established in this case. As the record shows, based on the eye witnesses' accounts of the altercation, in which one eye witness communicated that Sada had "socked" his son, prevented the conclusiveness of the parental physical discipline privilege. And in any event, given the absence of binding precedent holding that affirmative defenses must be considered in a probable cause determination, we cannot say that the law regarding affirmative defenses was so clearly established as to have provided fair warning to the Defendants that their actions were unconstitutional. See Hope, 536 U.S. at 739-41. Thus, the district court did not err in holding that the possible application of Florida's parental discipline privilege did not preclude probable cause as a matter of law.

12

Finally, because the officers had probable cause to arrest Sada for battery, the district court did not err in granting summary judgment on Sada's federal constitutional claims and state law false arrest/false imprisonment claims. See Rankin, 133 F.3d at 1435 (stating that probable cause constitutes an absolute bar to both state and §1983 claims alleging false arrest); Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002) ("[T]he existence of probable cause to arrest Dahl defeats her First Amendment claim."). In addition, because any contact with Sada, and any injury therefrom, was incidental to a lawful arrest, the district court did not err in granting summary judgment on Sada's battery and intentional infliction of emotional distress claims. See Fla. Stat. § 768.28(9)(a) (providing immunity for officers in tort unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."); Von Stein v. Brescher, 904 F.2d 572, 584 (11th Cir. 1990) ("[T]he conduct is privileged and the actor is never liable where he does no more than insist upon his legal rights in a permissible way, even though the actor is well aware that such insistence is sure to cause emotional distress."). Further, because Sada was not deprived of any constitutional or statutory rights, the City is not municipally liable for claims of negligence for any insufficient training under §1983. City of Los Angeles v. Heller, 475 U.S. 796, 799 (holding that if a person has suffered no constitutional injury at the

13

hands of the individual police officer, the fact that the departmental regulations might have authorized a constitutional deprivation is immaterial). And lastly, because there was probable cause to arrest for battery, the district court properly concluded that the question of whether there was probable cause to arrest for disorderly conduct is moot. See Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (holding that when an arrest is properly supported by probable cause as to any offense, neither the officer's subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest). Accordingly, we affirm.[3]

**AFFIRMED.**

---

[3] Nevertheless, the Defendants-Appellees' motion for recovery of damages, double costs and attorneys' fees for frivolous appeal is DENIED.