[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2007
THOMAS K. KAHN
CLERK

No. 06-11399

D. C. Docket No. 04-00150 CV-BAE-6

ISAIAH JORDAN,
DOROTHY JORDAN,

Plaintiffs-Appellees,

versus

TOMMY MOSLEY, individually and in his
official capacity as an officer of the
Screven County Sheriff's Department,

Defendant-Appellant,

MIKE KILE, individually and in his
official capacity as Sheriff of the
Screven County Sheriff's Department,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(June 1, 2007)**

Before EDMONDSON, Chief Judge, TJOFLAT and GIBSON,[*] Circuit Judges.

EDMONDSON, Chief Judge:

Isaiah Jordan ("Plaintiff") filed suit against his niece's husband, Tommy Mosley ("Deputy Mosley"), who is the chief jailer for Screven County and an officer in the Sheriff's Department. Plaintiff alleged -- among other things -- violations of the Fourth Amendment and of state laws prohibiting false arrest and malicious prosecution. Deputy Mosley moved for summary judgment on all claims, arguing in part that he was entitled to qualified immunity on the Fourth Amendment claim and official immunity on the state law claims. The district court granted Deputy Mosley's motion in part, but denied his motion on the qualified immunity and official immunity issues. Deputy Mosley appeals. We reverse the denial of summary judgment on the Fourth Amendment claim, but we affirm the denial of summary judgment on the state law claims.

---

[*]Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

## I. Background

Because this appeal comes from a summary judgment, we must view the record in the light most favorable to Plaintiff. See Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n. 3 (11th Cir. 2000). In that light, these assertions are today's facts.[1]

In July 2002, Plaintiff and his wife visited their niece Diane Mosley at the Mosleys' home in Screven County. The Mosleys had been digging a well on their property with the help of a contractor, who kept a front-end loader -- a backhoe -- on the property. Before the visit, Diane had asked Plaintiff -- who is a heavy equipment operator -- if he would clean up the area and dig a hole for a fish pond. According to Plaintiff, Diane Mosley renewed the request during his visit. Plaintiff eventually went outside, operated the backhoe, caused a flat tire, and broke the hydraulic cylinder. Diane called Deputy Mosley -- who was at work -- to tell him about the damage, and Deputy Mosley told her to "tell [Plaintiff] to get off the equipment." Plaintiff did get off the backhoe and returned it to the place where he found it.

---

[1]We note that the "facts" set out in this opinion -- the "facts" that we must assume for the purposes of this appeal -- may turn out to be different than the actual facts of this case.

The next day, the contractor discovered the damage to his backhoe and discussed the matter with Deputy Mosley. For assistance, the contractor called Sheriff Kile, who advised the contractor to submit a bill for Deputy Mosley. Deputy Mosley received the bill and spoke to Plaintiff about payment. Plaintiff offered to pay half, but Deputy Mosley was insistent on the payment of the entire amount. Plaintiff paid Deputy Mosley nothing, despite Mosley's requests.

Deputy Mosley later told his colleague, Deputy Crockett, that Plaintiff used the contractor's backhoe, broke it, and refused to pay for the damage. Mosley never mentioned that his wife Diane may have requested Plaintiff to use the backhoe. Deputy Mosley then pressed Deputy Crockett to take out a warrant for Plaintiff's arrest. Deputy Crockett swore out an affidavit, alleging a violation of O.C.G.A. § 16-7-23(a)(1): criminal damage to property in the second degree.[2] The affidavit said, without elaboration, that "Isaiah Jordan did intentionally damage the property of Johnny Sheppard . . . [in an amount exceeding] $500." Based on Deputy Crockett's affidavit, a magistrate judge issued the arrest warrant.

In seeking the warrant, Deputy Crockett relied entirely on Deputy Mosley's story, did not further investigate the incident, and did not learn the details until

---

[2]A person commits the offense of criminal damage to property in the second degree when he "[i]ntentionally damages any property of another person without his consent and the damage thereto exceeds $500.00." O.C.G.A. § 16-7-23(a)(1).

4

much later. Deputy Crockett acknowledged in a deposition that Plaintiff "just wouldn't cooperate [in paying back the money] and a warrant was issued for his arrest to get him back down here [to Screven County] to talk to him."

Plaintiff was arrested pursuant to the warrant in Richmond County by law enforcement officers of that county. Then Plaintiff was transferred to the Screven County jail, where Deputy Mosley is the chief jailer. Plaintiff's wife arrived to post bond; and Deputy Mosley told her that the charges would be dropped if she paid $1,355.06, which included restitution for damages to the backhoe and other fees. She paid that amount; Plaintiff was released; and the charges were dropped.

Plaintiff sued Deputy Mosley under 42 U.S.C. § 1983, alleging violations of federal and state law rights. Deputy Mosley moved for summary judgment on all claims, and his motion was granted in part and denied in part.

Deputy Mosley has appealed the district court's judgment. His appeal only concerns two issues: (1) whether the district court erred in denying his qualified immunity defense against Plaintiff's Fourth Amendment claim; and (2) whether the district court erred in denying his official immunity defense against Plaintiff's state law claims of false arrest and malicious prosecution.[3]

---

[3]Deputy Mosley attempts to argue on appeal that he is entitled to Eleventh Amendment immunity from the claims against him in his official capacity as deputy sheriff. He did not raise this defense below, and the district court did not decide the question. Although we have decided that a sheriff

5

## II. Discussion

### A. Fourth Amendment

We first note the obvious fact that Deputy Mosley neither arrested Plaintiff nor obtained the pertinent arrest warrant. In this Circuit, a non-arresting officer who instigates or causes an unlawful arrest can still be liable under the Fourth Amendment. Rodriguez v. Ritchey, 539 F.2d 394, 400 (5th Cir. 1976).[4]

We now turn to Deputy Mosley's argument that he -- in his personal capacity -- is entitled to qualified immunity on Plaintiff's Fourth Amendment claim. "Qualified immunity protects government officials performing discretionary functions from civil trials [ ] and from liability if their conduct violates no clearly established statutory or constitutional rights of which a

---

was entitled to Eleventh Amendment immunity with respect to certain functions, see Manders v. Lee, 338 F.3d 1304, 1328-29 (11th Cir. 2003), we have not yet decided whether the Eleventh Amendment could provide immunity to a sheriff's deputy. We make no attempt to decide the issue today. See Bouchard Transp. Co. v. Florida Dept. of Envtl. Protection, 91 F.3d 1445, 1448 (11th Cir. 1996) (declining to decide the sovereign immunity question that the district court never addressed); see also Lytle v. Griffith, 240 F.3d 404, 410 (4th Cir. 2001) (declining to decide the sovereign immunity question because it was best first resolved by the district court); Roberts v. College of the Desert, 870 F.2d 1411, 1415 (9th Cir.1988) (same).

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered before 1 October 1981.

reasonable person would have known." Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1319 (11th Cir. 2005) (alteration in original) (quoting Lassiter v. Ala. A&M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc)). The immunity protects "all but the plainly incompetent or those who knowingly violate the law." Id. (quoting McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995)).

Qualified immunity ordinarily involves a two-part inquiry. First, we decide whether the facts establish a violation of federal law. See Draper v. Reynolds, 369 F.3d 1270, 1274-75 (11th Cir. 2004). Second, if we decide that a violation of federal law has occurred, we must determine whether the rights violated were already clearly established when the defendant acted. See id. at 1275.

Thus, we begin by deciding whether the facts -- which we construe favorably to Plaintiff -- show a Fourth Amendment violation. If probable cause existed for Plaintiff's arrest, the Fourth Amendment was not violated. See Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003).

Probable cause exists when "the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Miller v.

7

Harget, 458 F.3d 1251, 1259 (11th Cir. 2006) (quoting Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)).

In the light most favorable to Plaintiff, these facts are the material facts Deputy Mosley knew: (1) at some time, Diane Mosley asked Plaintiff to use the backhoe and to clean the area behind the house; (2) Plaintiff used the contractor's backhoe without the consent of the contractor-owner; (3) Plaintiff caused damage to the backhoe in excess of $500; and (4) Plaintiff refused to pay for the damage. Based on those facts, we conclude that an objectively reasonable officer in Mosley's place would have cause to believe that Plaintiff intentionally caused damage to the backhoe in excess of $500 without the consent of the owner, thereby committing criminal damage to property in the second degree under O.C.G.A. § 16-7-23(a)(1). In other words, probable cause existed for the arrest.

Plaintiff, however, contends that Deputy Mosley lacked probable cause to arrest Plaintiff because Deputy Mosley had no reason to believe that Plaintiff "intentionally" damaged the backhoe.

Of course, no police officer can truly know another person's subjective intent. But that Plaintiff did, in fact, damage the backhoe is undisputed. And that fact provides some evidence to believe that Plaintiff intended to damage the backhoe. See United States v. Martinez, 96 F.3d 473, 478 n.7 (11th Cir. 1996) ("

8

'[A]cts indicate the intention' is an old maxim"). Beyond that, an officer would need no further evidence of Plaintiff's intent to cause Plaintiff's arrest. No officer has a duty to prove every element of a crime before making an arrest. Scarbrough v. Myles, 245 F.3d 1299, 1302-03 (11th Cir. 2001). "Police officers are not expected to be lawyers or prosecutors." Id. at 1303 n.8.

The crime for which Plaintiff was arrested is a general intent crime. A person commits the offense defined in O.C.G.A. § 16-7-23(a)(1) when he "intentionally damages any property of another person without his consent and the damage thereto exceeds $500.00." The only requisite intent of this crime is a general intent to do the act: damaging another person's property. Cf. Strickland v. State, 479 S.E.2d 125, 128 (Ga. Ct. App. 1996) (writing that "sexual battery requires only general intent" when that crime was defined as "intentionally mak[ing] physical contact with the intimate parts of the body of another person without the consent of that person").[5]

Plaintiff was arrested for a general intent crime, and Deputy Mosley -- or, to be more technically correct, an objectively reasonable police officer -- needed no specific evidence of intent to make the arrest. This conclusion is consistent with other courts that have addressed similar issues in the context of probable cause.

---

[5]We are not addressing specific intent crimes today.

The Ninth Circuit only requires probable cause on the element of intent when the crime is a specific intent offense. Compare Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir. 1994) ("[W]hen specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred.") with United States v. O'Reilly, No. 96-10099, 1997 WL 306425, *1 (9th Cir. June 5, 1997) (unpublished) ("If this is a crime of general intent, the officers need not have probable cause for this element [of intent]."). And the Second Circuit does not require probable cause to be established by direct evidence of a suspect's state of mind when it can be inferred from circumstantial or indirect evidence. See Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989) (deciding that evidence supported a sufficient inference of knowledge for probable cause when the crime required "knowing possession of stolen property"); see also McGuire v. City of New York, 142 Fed. Appx. 1, 3 (2d Cir. 2005) (unpublished) ("[W]hen an officer has evidence that a defendant has engaged in conduct proscribed by law -- whether transporting a quantity of drugs, possessing a stolen item, or driving with a suspended license -- he has probable cause to arrest the person even without specific evidence on the elements of knowledge and intent that will have to be proved to secure a conviction at trial.").

10

And our own Circuit has concluded that, even for a criminal statute that requires proof of an intent to defraud for a conviction, an arresting officer does not need evidence of the intent for probable cause to arrest to exist. See United States v. Everett, 719 F.2d 1119, 1120 (11th Cir. 1983) (passing or possessing counterfeit money).[6]

Thus, when a police officer arrests a suspect for committing a general intent crime such as the one defined in O.C.G.A. § 16-7-23(a)(1), the officer needs no specific evidence of the suspect's intent. All that is required is probable cause to believe that the suspect did the prohibited acts. Because Deputy Mosley knew Plaintiff damaged the backhoe, we conclude that the arrest was lawful -- for Fourth Amendment purposes -- even if Deputy Mosley had no specific evidence on whether Plaintiff's act of damage was intentional.

Plaintiff also contends that he could not have committed the statutory offense because Diane Mosley consented to Plaintiff's use of the backhoe and she

---

[6]Although intent must be proved for a conviction in Georgia, a person can be convicted for a general intent offense without direct evidence of intent because "general intent may be inferred from the conduct of the accused." Prine v. State, 515 S.E. 2d 425, 427 (Ga. Ct. App. 1999); Cline v. State, 405 S.E. 2d 524, 525 (Ga. Ct. App.1991) (noting that criminal intent may be inferred from circumstances connected with the accused's crime); COUNCIL OF SUPERIOR COURT JUDGES OF GEORGIA, 2 GEORGIA SUGGESTED PATTERN JURY INSTRUCTIONS: CRIMINAL CASES 1.41.10 (2006) ("[Intent] may be inferred from the proven circumstances or by acts and conduct, or it may be, in [the jury's] discretion, inferred when it is the natural and necessary consequence of the act."). The prosecution can indirectly prove the requisite "intent" by proving that the accused did the pertinent act. Prine, 515 S.E. 2d at 427.

had apparent authority to do so. Thus, Plaintiff argues, Deputy Mosley could not have reasonably believed Plaintiff violated the statute.

The Mosleys did not own the backhoe, and Plaintiff does not contend he thought they did. Assuming <u>arguendo</u> that Deputy Mosley knew his wife asked Plaintiff to use the backhoe, we are not convinced -- and we need not decide -- that what must be seen as some kind of apparent-authority defense would have provided Plaintiff with a complete defense to the pertinent crime under Georgia law. Under the law of probable cause, no police officer had a duty to resolve this legal question before seeking out Plaintiff's arrest. <u>See</u> <u>Pickens v. Hollowell</u>, 59 F.3d 1203, 1207 (11th Cir. 1995) (deciding that police officers have no responsibility to determine the viability of a statute of limitations defense when executing a valid arrest warrant). We conclude that an objectively reasonable officer in Deputy Mosley's position could have believed that Plaintiff violated the pertinent statute, even if Diane Mosley consented to Plaintiff's use of the contractor's backhoe.[7]

---

[7]Plaintiff also suggests that probable cause is undermined by Deputy Mosley's improper motive of using the criminal process to collect a civil debt. But Fourth Amendment probable cause is a purely objective determination; the specific officer's subjective intent cannot be considered. Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997).

Therefore, the district court erred in denying summary judgment in favor of Deputy Mosley on Plaintiff's Fourth Amendment claim.

## B.  State Law Claims

Deputy Mosley also argues that he is entitled to official immunity on Plaintiff's state law claims of false arrest and malicious prosecution.  The Georgia Constitution allows state employees to be sued for performing their discretionary functions[8] only "if they act with actual malice or with actual intent to cause injury in the performance of their official functions." GA. CONST. art. I, § II, par. IX(d); Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994).

Unlike qualified immunity under federal law, we must inquire into Deputy Mosley's subjective intent to determine whether he has official immunity under Georgia law.  We agree with the district court that summary judgment was improper on grounds of official immunity because Plaintiff has raised a genuine

---

[8]That Deputy Mosley was performing a discretionary function when he encouraged Deputy Crockett to obtain a warrant for Plaintiff's arrest is undisputed.  See Todd v. Kelly, 535 S.E. 2d 540, 542 (Ga. Ct. App. 2000).

13

issue of material fact about Deputy Mosley's intent in pursuing Plaintiff's arrest warrant.[9]

Plaintiff has offered evidence tending to show that Deputy Mosley caused Plaintiff to be arrested so that Mosley could collect a civil debt. Plaintiff testified that Deputy Mosley first demanded payment for the damage to "teach [Plaintiff] a lesson." Deputy Mosley testified that the warrant was issued because Plaintiff refused to pay for the damage to the backhoe. Deputy Crockett said the warrant was issued to get Plaintiff down to Screven County to talk about payment. Construing such evidence in the light most favorable to Plaintiff, we think a reasonable fact finder could find that Deputy Mosley acted with the deliberate intent of causing Plaintiff to be arrested to collect a civil debt: an intent to do a wrongful act -- to imprison Plaintiff unlawfully for debt -- amounting to actual malice. See GA. CONST. art. 1, § 1, par. XXIII (prohibiting imprisonment for debt); O.C.G.A. § 51-7-20 (defining the tort of false imprisonment as the "unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty"); Adams v. Hazelwood, 520 S.E. 2d

---

[9]We do not decide whether the complaint states a claim for these alleged state torts. Cf. Anderson v. Cobb, 573 S.E. 2d 417, 419 (Ga. Ct. App. 2002) (noting that inquiry into whether official acted with actual malice is distinct from inquiry of whether official committed alleged torts).

14

896, 898 (Ga. 1999) (writing that "actual malice" in the context of official immunity requires "a deliberate intention to do a wrongful act").

Accordingly, the district court properly denied summary judgment on Plaintiff's remaining state law claims on grounds of official immunity.

## III. Conclusion

On this record, we conclude that Deputy Mosley is entitled to summary judgment on Plaintiff's Fourth Amendment claim; the denial of summary judgment to Mosley on this claim is reversed. But Deputy Mosley is unentitled to official immunity on Plaintiff's state law claims. Therefore, the district court's decision is reversed in part and affirmed in part; and the case is remanded.

**REVERSED in part, AFFIRMED in part, and REMANDED.**