[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14063
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-03711-SCJ

JOHN ELMORE, JR.,

Plaintiff-Appellant,

versus

FULTON COUNTY SCHOOL DISTRICT,
DEMARCOS HOLLAND,
NICOLE K. SAUCE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 8, 2014)

Before MARCUS, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

John Elmore, Jr., appeals the dismissal of his amended civil-rights complaint, under 42 U.S.C. § 1983, alleging that he was illegally arrested and denied equal-protection rights in violation of the Fourth and Fourteenth Amendments.  In this appeal, we are asked to determine whether the police officer who prepared affidavits for Elmore's arrest is entitled to qualified immunity, and whether Elmore stated a claim of supervisor liability against the principal of the school in which the officer worked.  After careful consideration, we affirm the dismissal of Elmore's amended complaint.

## I.

Elmore was employed by the Fulton County School District (the "District") as a paraprofessional educator.[1]  In that capacity, he assisted a classroom teacher in a class with moderately to severely disabled students.  One student, who was wheelchair-bound and non-verbal, had a history of biting and scratching himself whenever he got angry or frustrated.  The student would also bite at others if they attempted to stop him.

On December 7, 2011, the student began scratching himself in class.  To distract him and to stop him from scratching, according to the amended complaint, the teacher, Ms. Morrow, lightly sprayed the student with a fine mist of water.  A

---

[1]  We present the facts as alleged in the complaint, accepting the factual allegations as true and construing all reasonable inferences in Elmore's favor. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

special-needs nurse who had been meeting with the teacher saw the spraying. The nurse later determined that she had witnessed child abuse and made a complaint.

Nicole Sauce[2], a police officer for the District, investigated the nurse's complaint. Initially, Sauce prepared a memorandum. The entire allegation in the memo stated, "Teacher was observed by special needs nurse spraying a special needs student in the face for acting out in class."

Sauce then conducted several interviews regarding the incident. These interviews, which involved at least four witnesses—the classroom teacher, Elmore, the nurse, and a student—concerned, among other issues, who, if anyone, had sprayed the student. The classroom teacher, Ms. Morrow, specifically stated that Elmore had not sprayed the student with water. Elmore denied spraying the student and stated that the spray bottle was used to demonstrate various things like rain. Sauce later falsely stated that Elmore had admitted spraying the student.[3]

After Sauce's investigation, the principal of the school, Demarcos Holland, made a complaint against Elmore, alleging child abuse. Holland directed Sauce to obtain a warrant for Elmore's arrest. Sauce did so without revealing the exculpatory information provided by Ms. Morrow. A Georgia state magistrate judge issued two warrants for Elmore's arrest, one for "Cruelty to Children,"

---

[2] At the time of the incident, Sauce's last name was "Wright."
[3] It is not clear to whom Sauce made this statement.

3

O.C.G.A § 16-5-70, and one for "Simple Battery," O.C.G.A. § 16-5-23.  In the affidavits for each warrant, Sauce swore that Elmore

> did spray a severe and profound juvenile repeatedly about the arms and face because he was agitated that the radio was turned down.  [Elmore] used the spray to try any [sic] stop the juvenile from screaming only to further agitate him. . . . The incident took place in the presence of two witnesses, a cluster nurse and a student that confirmed the incident.

Elmore was arrested and charged with cruelty to children in the third degree and simple battery.  As a result, Elmore was fired by Holland and the District.

## II.

Elmore filed his complaint, which he later amended, in the United States District Court for the Northern District of Georgia.  Elmore's amended complaint asserted two causes of action under § 1983, alleging violations of the Fourth Amendment for "illegal arrest" (against Sauce and Holland in their individual capacities), and violations of the Fourteenth Amendment for the denial of his equal-protection rights (against Holland and the District).[4]  The defendants moved to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P.  Sauce invoked the defense of qualified immunity.

---

[4] Elmore does not challenge the district court's dismissal of his claim against Holland and the District alleging the denial of his equal-protection rights.  He also does not challenge the denial of his motion to amend his complaint with respect to these claims.  We therefore deem Elmore's equal-protections claims abandoned.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014) (stating that issues not raised on appeal are abandoned).

Elmore responded that Sauce was not entitled to qualified immunity because she withheld material, exculpatory information in order to obtain the arrest warrants, in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978). Elmore also asserted that Sauce was not entitled to qualified immunity because the actions he allegedly committed were entitled to complete immunity under O.C.G.A. § 20-2-1001, which grants educators immunity from criminal liability for student discipline. Elmore argued that Holland was liable for ordering his arrest.

The district court granted the defendants' motion to dismiss. The court determined that Sauce was entitled to qualified immunity. According to the district court, even if Sauce had included the exculpatory information, the warrant affidavit still established probable cause to arrest Elmore for the offense of simple battery. And, the court concluded, probable cause for simple battery rendered his arrest valid despite a lack of probable cause for cruelty to children in the third degree. Further, the court found, Elmore's claim of immunity under O.C.G.A. § 20–2–2001 was an affirmative defense that did not factor into the probable-cause assessment. The court also determined that Elmore's claim against Holland failed because Elmore did not allege that Holland was Sauce's supervisor, nor did he allege sufficient factual information to show that Holland directed Sauce to act in violation of Elmore's constitutional rights. Elmore now appeals the dismissal of his amended complaint.

5

## III.

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

## IV.

The defense of qualified immunity aims to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009). Towards that end, qualified immunity protects government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Keating v.*

*City of Miami*, 598 F.3d 753, 762 (11th Cir.2013) (brackets and internal quotation marks omitted).

Under the qualified-immunity doctrine, the official must first show that she was engaged in a discretionary function. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). It is undisputed that Sauce has established this fact.

The burden then shifts to Elmore to demonstrate that Sauce is not entitled to qualified immunity. *See id.* To do so, Elmore must show both that Sauce violated a constitutional right and that the right was "clearly established . . . in light of the specific context of the case, not as a broad general proposition[,]" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). A right must be clearly established to ensure that "officers are on notice their conduct is unlawful." *Id.* at 206, 121 S. Ct. at 2158. In other words, the right's "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) (internal quotation marks omitted). We may decide these issues in either order, but Elmore must make both showings to survive a qualified-immunity defense. *Maddox*, 727 F.3d at 1120-21.

Elmore primarily contends that Sauce is not entitled to qualified immunity because she violated *Franks* by omitting material, exculpatory evidence from her warrant affidavits. He also argues that his own immunity from criminal liability as

7

an educator under Georgia law negated a finding of probable cause and that Sauce should have disclosed his potential immunity to the magistrate.  Finally, he asserts that he may maintain a claim based on the lack of probable cause to arrest for cruelty to children, even if probable cause existed for the offense of simple battery.

## A.    *Alleged* Franks *Violations*

In *Franks*, the Supreme Court held that a warrant violates the Fourth Amendment if the affidavit supporting the warrant contains "deliberate falsity or . . . reckless disregard" for the truth.  438 U.S. at 171, 98 S. Ct. at 2684 (concerning a search warrant affidavit); *see United States v. Martin*, 615 F.2d 318, 327-29 (5th Cir. 1980) (applying *Franks* to an arrest warrant affidavit).[5]  However, only false statements which are necessary to the finding of probable cause will invalidate a warrant.  *Franks*, 438 U.S. at 155-56, 98 S. Ct. at 2676.

The reasoning of *Franks* also applies to omissions from a warrant affidavit. *Martin*, 615 F.2d at 328.  "Thus, a warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit." *Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (internal quotation marks omitted).  Without direct evidence of intentional or reckless conduct, a plaintiff may raise an inference of recklessness where "the facts omitted from the affidavit are clearly critical to a

---

[5]  All cases from the former Fifth Circuit issued before October 1, 1981, are binding on the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

finding of probable cause." *Martin*, 615 F.2d at 329. Omissions that are made negligently will not invalidate a warrant. *Madiwale*, 117 F.3d at 1327. And "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.*; *see also Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir. 2002) ("[T]he warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause.").

Elmore contends that Sauce omitted the following facts about the incident from the warrant affidavits: (1) the nurse made no complaint at the time of the spraying incident; (2) Sauce previously prepared a memo stating that "Teacher was observed by special needs nurse spraying a special needs student in the face for acting out in class"; and (3) Ms. Morrow had told Sauce that Elmore did not spray the student. As the district court did, we proceed directly to the question of whether Elmore's allegations and the reasonable inferences drawn from them show that "inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale*, 117 F.3d at 1327; *see also Dahl*, 312 F.3d at 1235.

Probable cause exists when the facts and circumstances, of which the official has reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007). "No officer has a duty to

prove every element of a crime before making an arrest. Police officers are not expected to be lawyers or prosecutors." *Id.* (citation and quotation marks omitted). Rather, in assessing probable cause, we deal with "the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted).

Sauce made out two warrant affidavits in this case, one for simple battery and the other for cruelty to children in the third degree. A person commits cruelty to children in the third degree when he is the "primary aggressor" and commits a "forcible felony, battery, or family violence battery" knowing or intending that a child under the age of 18 will witness the act. *See* O.C.G.A. § 16–5–70(d). A person commits simple battery when he either "(1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) Intentionally causes physical harm to another." O.C.G.A. § 16–5–23.

Sauce swore to the same supporting facts in each affidavit. When we consider the facts alleged in the affidavits, as well as the omitted facts about which Elmore complains, the universe of facts includes the following: (1) Elmore sprayed a severe and profound juvenile repeatedly about the arms and face because he was agitated that the radio was turned down; (2) Elmore used the spray to try and stop the juvenile from screaming only to further agitate him; (3) a nurse

10

witnessed the student being sprayed and later made a complaint, but did not complain at the time; (4) Sauce's initial memorandum regarding the complaint stated that "Teacher" sprayed the student; (5) the classroom teacher told Sauce that Elmore did not spray the student; and (6) the nurse and a juvenile student stated that Elmore had sprayed the student.

We agree with the district court that the warrant affidavit does not establish even arguable probable cause to believe that Elmore committed the crime of cruelty to children in the third degree. The affidavit does not allege the requisite forcible felony or battery, *see, e.g.*, O.C.G.A. § 16–5–23.1(a) (requiring for the offense of "battery" the intentional causing of "substantial physical harm or visible bodily harm to another"), nor could the facts known to Sauce lead a reasonable person to believe that a forcible felony or battery had been committed.

But including the omitted facts when determining whether probable cause existed to believe that Elmore committed the offense of simple battery does not negate the probable cause that the magistrate judge found for that offense. *See Madiwale*, 117 F.3d at 1327. The conduct alleged fits within the definition of simple battery as intentional physical contact of a provoking nature with the person of another. *See* O.C.G.A. § 16–5–23. And the revised affidavit provides sufficient grounds for a prudent person, based on the facts and circumstances, to believe that Elmore, not the classroom teacher or another person, committed the offense.

11

The revised affidavit provides that two witnesses confirmed that Elmore sprayed the student, while the teacher and Elmore stated that he did not. Although Sauce's initial memo reflects that "Teacher" sprayed the student, Sauce was not present and did not witness the incident. Moreover, Sauce is not an educator, and Elmore, a "paraprofessional educator" could fairly have been considered or described by her and others such as the nurse to be a "teacher." In addition, during the interview, the nurse apparently named Elmore as the person who had sprayed the student. Significantly, the nurse's account of the incident was also corroborated by a juvenile student.

Nor do Elmore's allegations provide any reason to doubt that the nurse and the student in fact identified Elmore to Sauce. The fact that the nurse "made no complaint at the time" does not, without more, undermine the nurse's credibility, particularly when we do not know the length of time between the incident and the complaint. As for Elmore and Ms. Morrow's conflicting statements, each arguably had an interest in a determination that Elmore was not involved. Thus, while we agree that it certainly would have been better for Sauce to have included the alleged inconsistencies in the warrant affidavit, consideration of the omitted material would not have precluded a finding of probable cause to believe that Elmore committed the offense of simple battery.

12

In any event, even if consideration of all of the facts did not establish actual probable cause for the offense of simple battery, the facts are adequate to establish arguable probable cause to believe that Elmore violated O.C.G.A. § 16–5–23. *See Madiwale*, 117 F.3d at 1327.  Sauce conducted an investigation and interviewed pertinent witnesses.  Despite the conflicting witness statements, and even if Sauce had been mistaken, the facts could have led a prudent officer to believe that reasonably trustworthy information established probable cause for simple battery. *See Dahl*, 312 F.3d at 1234 ("[A]rresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed."); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (explaining the "arguable probable cause" standard).  In other words, Sauce is entitled to qualified immunity because the omitted facts were not "so clearly material that every reasonable law officer would have known that their omission would lead to [an arrest] in violation of federal law."  *Madiwale*, 117 F.3d at 1327 (quotation marks omitted).

Elmore also contends that Sauce should have disclosed to the magistrate his status an educator and the existence of educator immunity under O.C.G.A. § 20–2–1001.  That contention assumes that Elmore's potential immunity was relevant to the probable-cause analysis.  We turn to that question now.

13

## B.    *Educator Immunity under Georgia Law*

Elmore asserts that the district court erroneously concluded that Elmore's potential immunity as an educator under Georgia law did not affect the probable-cause analysis. Under the circumstances, we find that the district court did not err.

Elmore claims immunity under O.C.G.A. § 20–2–1001, which provides as follows: "An educator shall be immune from criminal liability for any act or omission concerning, relating to, or resulting from the discipline of any student or the reporting of any student for misconduct, provided that the educator acted in good faith." O.C.G.A. § 20–2–1001(b). Elmore's former position as a "paraprofessional" is included in the term "educator." O.C.G.A. § 20–2–1001(a). Under Georgia law, the defendant bears the burden of proving entitlement to educator immunity under Georgia law by a preponderance of the evidence. *State v. Pickens*, ___ S.E.2d ___, No. A14A1593, 2015 WL 872224, at *1 (Ga. Ct. App. Mar. 3, 2015); *State v. Cohen*, 711 S.E.2d 418, 419 (Ga. Ct. App. 2011).

In making an assessment of probable cause, officers generally have no duty to resolve legal questions or to investigate possible defenses. *See Jordan*, 487 F.3d at 1356-57; *cf. Baker v. McCollan*, 443 U.S. 137, 145-46, 99 S. Ct. 2689, 2695 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.");

14

*Pickens v. Hollowell*, 59 F.3d 1203, 1207 (11th Cir. 1995) ("[P]olice officers have no responsibility to determine the viability of a statute of limitations defense when executing a valid arrest warrant.").

For example, in *Morris v. Town of Lexington, Alabama*, 748 F.3d 1316 (11th Cir. 2014), this Court recently concluded that the possible application of an affirmative defense to an assault charge did not affect whether the officers had probable cause, or at least arguable probable cause, to believe that the plaintiff had committed an assault. *Id.* at 1325. Similarly, in *Jordan*, we held that a police officer did not need to consider the application of an "apparent-authority defense" before seeking the defendant's arrest. *Jordan*, 487 F.3d at 1356-57. For that reason, we declined to address whether the defense "would have provided Plaintiff with a complete defense to the pertinent crime under Georgia law." *Id.*

Elmore cites our unpublished decision in *Williams v. Sirmons*, 307 F. App'x 354 (11th Cir. 2009), where we held that "in determining whether probable cause to arrest exists, an officer must consider all facts and circumstances within that officer's knowledge, including facts and circumstances conclusively establishing an affirmative defense." *Id.* at 358-59; *see also Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002) ("[P]robable cause determinations include facts and circumstances establishing a statutorily legitimated affirmative justification for the suspected criminal act." (internal quotation marks omitted)). According to

15

*Sirmons*, "if an officer has knowledge of facts and circumstances which establish an affirmative defense, he or she lacks probable cause to arrest, even when the facts and circumstances establish that the person meets all elements of the offense." *Sirmons*, 307 F. App'x at 359.

Applying that standard in *Sirmons*, we concluded that the officers did not have even arguable probable cause to arrest the plaintiff for fleeing from a traffic stop because, even though the plaintiff met all the elements of the offense, the officers knew of facts—like the facts that the plaintiff was pregnant, bleeding, in distress, and on her way to the hospital for emergency treatment—showing that the plaintiff's flight was justified by the affirmative defense of necessity or duress. *Id.* at 359-60. Therefore, we held that the officers were not entitled to qualified immunity. *Id.* at 360.

Here, however, even if we assumed that officers generally are required to consider statutory-immunity defenses in their probable-cause assessments, the application of Georgia's educator-immunity statute was not sufficiently established in this case. The statute provides that an educator's disciplinary actions towards students are immune from criminal liability, provided that the educator acts in "good faith." O.C.G.A. § 20–2–1001(b). "'Good faith' is a subjective standard: a state of mind indicating honesty and lawfulness of purpose; belief that one's conduct is not unconscionable or that known circumstances do not require further

16

investigation." *Pickens*, 2015 WL 872224, at *5 (quotation marks omitted). Further, the existence of good faith is a question for the trier of fact. *Id.*

Although Sauce knew that Elmore was an educator and that his alleged actions were arguably disciplinary in nature, Sauce had some reason to doubt that Elmore was acting in "good faith." Specifically, the nurse made an allegation that "child abuse" had occurred in the classroom based on the spraying incident, and Sauce apparently interviewed a juvenile student who stated that Elmore had sprayed the student. Moreover, since Elmore altogether denied having sprayed the student, no one asserted that Elmore had sprayed the student in good faith. Based on these facts, we cannot say that facts known to Sauce conclusively established that Elmore was immune from criminal liability.

In this respect, Elmore's reliance on *Cohen* is misplaced. The Georgia Court of Appeals in *Cohen* upheld the trial court's grant of immunity from prosecution for simple battery, under O.C.G.A. § 20–2–1001, based on the trial court's finding that the defendant acted in good faith. *Cohen*, 711 S.E.2d at 419-20. But the fact that Elmore engaged in similar conduct as the defendant in *Cohen* does not establish that Elmore subjectively acted in good faith, which is a question for the trier of fact. *See Pickens*, 2015 WL 872224, at *5.

In any case, given the absence of binding precedent holding that statutory-immunity defenses must be considered in a probable-cause determination,

17

particularly a defense that turns on the subjective intent of the party claiming immunity, we cannot say that the law was so clearly established as to have provided fair warning to Sauce that her failure to consider, or to inform the magistrate of, Elmore's potential immunity in assessing whether probable cause existed was unconstitutional. *See Hope*, 536 U.S. at 739, 122 S. Ct. at 2515; *cf. Jordan*, 487 F.3d at 1355 ("Of course, no police officer can truly know another person's subjective intent."). Indeed, even Elmore concedes that Sauce may be entitled to qualified immunity with respect to the claim that Sauce should have informed the magistrate of Elmore's potential immunity under O.C.G.A. § 20–2–1001.

## C.     *Whether Probable Cause to Arrest Bars Elmore's Claims*

In resolving Elmore's claims, the district court concluded that the existence of probable cause to arrest Elmore for simple battery rendered his arrest constitutionally valid, despite the lack of probable cause for cruelty to children. The court relied on the well-established rule that the existence of probable cause does not turn on the arresting officer's state of mind. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 593-94 (2004). So long as the circumstances known to the officers, viewed objectively, give probable cause to arrest for any crime, the arrest is constitutionally valid even if probable cause was lacking as to some

offenses, or even all announced charges.  *Id.* at 153-55, 125 S. Ct. at 593-94; *Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002).

Elmore counters that the rule of *Devenpeck* applies only to warrantless arrests.  Where, as here, an arrest is made pursuant to a warrant, Elmore asserts, probable cause must be assessed independently with respect to each warrant.  Thus, Elmore argues, he may maintain a claim based on the lack of probable cause to arrest for cruelty to children in the third degree even if probable cause to arrest for another offense existed.

In general terms, a warrantless arrest without probable cause provides the basis for a § 1983 claim for false arrest.  *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004); *see Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3-4 (1st Cir. 1995) (analogizing a §1983 false arrest claim to the common law tort of false arrest).  Thus, it follows that probable cause to arrest, viewed objectively, bars a false-arrest claim.  *See Kingsland*, 382 F.3d at 1226; *Lee*, 284 F.3d at 1195-96; *see also Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990 ("The existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest.").

By contrast, seizures following the "institution of a prosecution," such as an arrest pursuant to a warrant, generally serve as the basis for a § 1983 claim for malicious prosecution.  *Whiting v. Traylor*, 85 F.3d 581, 585-86 (11th Cir. 1996);

19

*see also Calero-Colon*, 68 F.3d at 4 ("As a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution."). This Circuit recognizes a § 1983 cause of action for malicious prosecution in violation of the Fourth Amendment. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). We have held that "[t]o establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures."[6]  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010).

Generally, in contrast to false-arrest claims, "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) (concerning malicious prosecution under Illinois state law); *Johnson v. Knorr*, 477 F.3d 75, 83 (3d Cir. 2007); *cf. Uboh v. Reno*, 141 F.3d 1000, 1005 (11th Cir. 1998) (conviction on some charges in indictment does not preclude malicious prosecution claim based on dismissal of other charges). In *Holmes*, the Seventh Circuit explained the distinction in this way: when an individual is arrested, the seizure is the same whether the arrest was based on one

---

[6]  The common-law elements of malicious prosecution include the following: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882.

or multiple grounds; but once an individual is prosecuted, each additional charge imposes additional costs and burdens. *Holmes*, 511 F.3d at 682-83.

The district court construed Elmore's allegations as akin to a claim for false arrest because he complained of an arrest without probable cause and identified his claim as one for "illegal arrest."[7]  Although two warrants issued, the amended complaint alleges that only one arrest occurred ("The *arrest* of Plaintiff was without probable cause or arguable probable cause and in violation of the Fourth and Fourteenth Amendment prohibition against unreasonable search and seizure." (emphasis added)).  Therefore, to the extent that Elmore challenged only the constitutionality of his arrest, the district court would not have erred in concluding that Elmore's arrest was constitutionally valid because it was supported by probable cause.  *See Devenpeck*, 543 U.S. at 153-55, 125 S. Ct. at 593-94; *Lee*, 284 F.3d at 1195-96; *see also Marx*, 905 F.2d at 1505-06; *Holmes*, 511 F.3d at 682 ("An arrested individual is no more seized when he is arrested on three grounds rather than one[.]").

On appeal, Elmore contends that his case is controlled by this Court's decision in *Uboh*, which concerned a claim for malicious prosecution.  And Elmore may be correct that he could have maintained a § 1983 malicious-prosecution claim based on the lack of probable cause to arrest for cruelty to

---

[7]    At no point in the district-court proceedings did Elmore suggest that his Fourth Amendment claim should have been construed as one for malicious prosecution.

children in the third degree.  *See Holmes*, 511 F. 3d at 682-83; *Johnson*, 477 F.3d at 83.    Accordingly, the district court arguably may have erred in failing to consider the substance of Elmore's claim as one alleging malicious prosecution. *But see Calero-Colon*, 68 F.3d at 3 ("Even though malicious prosecution and false arrest may seem distinct enough in abstract definition, however, in a wrongful arrest case—*particularly an arrest conducted pursuant to a warrant based on false allegations*—the lines between the two may become blurred.").

Nonetheless, even assuming—as Elmore contends—that this Court's decision in *Uboh* controls this case, the amended complaint fails to allege facts necessary to state a § 1983 claim for malicious prosecution.  As the Court in *Uboh* explained, "[I]n order to state a cause of action for malicious prosecution, a plaintiff must allege and prove that the criminal proceeding that gives rise to the action has terminated in favor of the accused."  *Uboh*, 141 F.3d at 1004; *see also Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

Here, Elmore did not allege in his amended complaint any facts establishing the common-law element of "favorable termination," such as the charges being dropped or dismissed.  Indeed, the amended complaint contains no allegations regarding a prosecution following his arrest pursuant to an invalid warrant.  *Cf.*

22

*Whiting*, 85 F.3d at 583-84 ("Whiting, however is not claiming just that he was seized unlawfully or that a warrant was issued without probable cause: he says he was "maliciously prosecuted" in violation of his Fourth Amendment rights."). Even if Elmore had been unconstitutionally seized pursuant to an invalid warrant, Elmore did not allege a necessary element of a common-law malicious prosecution claim.[8] *See Grider*, 618 F.3d at 1256. Therefore, the amended complaint fails to state a § 1983 claim of malicious prosecution. Consequently, the district court did not err in dismissing Elmore's § 1983 claim against Sauce, whether it is construed as a false-arrest claim or a malicious-prosecution claim, under Rule 12(b)(6).

## V.

Finally, Elmore argues that Holland, the principal of the school, is liable under § 1983 for ordering Elmore's allegedly unconstitutional arrest.

Supervisors cannot be held liable under § 1983 on the basis of vicarious liability or *respondeat superior*. *Keating*, 598 F.3d at 762. Nonetheless, "supervisors are liable under § 1983 either when the supervisor personally participates in the alleged constitutional violation or when there is a causal

---

[8] As part of his statement of facts in his initial brief, Elmore asserts that "[t]he charges were dismissed." However, this allegation did not appear in the amended complaint and Elmore did not move for leave to amend in the district court to allege that fact. *Cf. Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). Further, although Elmore's failure to allege favorable termination was raised by the Appellees in their response brief, Elmore did not then address the issue in his reply brief. Thus, in the absence of any guidance from Elmore, we affirm the dismissal of the claim.

23

connection between actions of the supervising official and the alleged constitutional violation." *Id.* (internal quotation marks omitted). The requisite causal connection can be established by facts supporting an inference that the supervisor directed his subordinates to act unlawfully or failed to stop his subordinates when the supervisor knew they would act unlawfully. *Id.*

Here, we know from the amended complaint that Holland was the principal of the school in which Elmore worked, that Sauce was a police officer for the District, and that Holland "directed Defendant Sauce to take out a warrant against Plaintiff." To the extent that Elmore argues that he was liable as a supervisor for ordering Elmore's arrest, Elmore has not alleged facts sufficient to support an inference that Holland was, in fact, Sauce's supervisor or that he had any authority over her. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) (affirming the grant of qualified immunity where the plaintiff failed to show that the defendants participated in the plaintiff's arrest or were supervisors of the officer who arrested her). Holland also was not personally involved in Elmore's arrest. *See id.* Nor do the allegations show that, even if Holland was Sauce's supervisor, Holland directed Sauce to act unlawfully or knew that she would act unlawfully by, for example, omitting material information from the warrant affidavit. *See Keating*, 598 F.3d at 762.

24

## VI.

In short, we affirm the district court's dismissal of Elmore's amended civil rights complaint. We conclude that Sauce is entitled to qualified immunity from Elmore's § 1983 claim based on a violation of the Fourth Amendment. We further determine that Elmore failed to state a claim of supervisor or personal liability against Holland for the alleged Fourth Amendment violation.

**AFFIRMED.**