[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14713
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cv-01052-CEM-DAB

JAMES ERIC JONES,

Plaintiff - Appellee,

versus

EDWARD MICHAEL,
ALBERTO NEGRON NIEVES,
CITY OF ORLANDO,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 7, 2016)

Before HULL, MARCUS, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, Defendants Police Officers Edward Michael and Alberto Negron Nieves ("Officer Negron") appeal the district court's denial of their motion for summary judgment in Plaintiffs' civil action under 42 U.S.C. § 1983.  Plaintiffs James Jones, Charles Schaefer, and Spencer Bass assert claims against Defendant Officers for false arrest and for excessive force, in violation of the Fourth Amendment.  Defendants contend they are entitled to qualified immunity.[1]  Reversible error has been shown; we affirm in part and vacate in part and remand.

Background:

This appeal arises out of Plaintiffs' arrests in January 2012, while Plaintiffs were in Orlando on business.  At about 11pm on the night of the arrests, Plaintiffs and between 15 and 23 co-workers arrived at a karaoke bar located within

---

[1] The district court also denied the City of Orlando's motion for summary judgment on Plaintiffs' state law claims for assault and battery; we decline to exercise pendant appellate jurisdiction over the City's appeal of that non-final order.  For background, see Leslie v. Hancock Cnty. Bd. of Educ., 720 F.3d 1338, 1344-45 (11th Cir. 2013).

Universal Studios City Walk.  Earlier in the evening, Plaintiffs had each had one to three drinks.  And, while at the karaoke bar, Plaintiffs each consumed another one and a half to two drinks.  Other members of Plaintiffs' group were also drinking that night and at least one co-worker was described by Plaintiffs as drunk.

After members of Plaintiffs' party twice violated the karaoke bar's policy about the number of people permitted on stage, Defendant Officers told Plaintiffs' party to leave the bar.  Schaefer objected to having to leave, and he was told again to leave the bar.  Schaefer began to leave, but then attempted to return to the bar area to retrieve a credit card left by a co-worker.  One of the officers told Schaefer again that he needed to "get out of here."  Schaefer then moved toward the exit and stood right at the "doorjamb," waiting for his co-worker to get the credit card.  One of the officers said "this is it, you're done," told Schaefer he was under arrest, and attempted to place Schaefer in handcuffs.

As Defendant Officers grabbed Schaefer's arms, Schaefer slipped out of his sport coat and, thus, out of Defendant Officers' grasp.  Schaefer then ran several feet before being tackled to the ground by a security officer.  A struggle ensued, after which Schaefer was handcuffed.

Meanwhile, several of Schaefer's co-workers -- including Bass and Jones -- crowded around the area where Defendant Officers were attempting to handcuff Schaefer.  The crowd appeared visibly upset by and hostile to Schaefer's arrest.

3

Briefly stated, Bass approached in what could easily have been seen as a threatening and confrontational manner the spot where Schaefer was being restrained, and Bass was pushed back repeatedly by two security officers. At times, a member of Plaintiffs' party physically held Bass back from continuing to confront the security officers. Jones also moved close to where Schaefer lay on the ground. Jones says he was attempting to record the events using his cell phone. Bass and Jones were both ultimately arrested.[2]

Qualified Immunity:

We review de novo a district court's denial of a motion for summary judgment based on qualified immunity, "drawing all inferences and viewing all of the evidence in a light most favorable to the nonmoving party." Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). Because we construe the evidence in favor of the nonmoving party, "material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity." Bates v. Lee, 518 F.3d 1233, 1239 (11th Cir. 2008).

---

[2] Helpful to our review in this case, surveillance cameras captured the pertinent events outside the karaoke bar after Schaefer's initial encounter with Defendant Officers and after Schaefer "slipped" out of his sport coat. We consider the video depiction of the parties' conduct that night, but note that the video contains no audio component.

4

When the nonmoving party's version of the facts, however, "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007). For instance, when a video recording exists of the pertinent events -- as in this case -- we "view[] the facts in the light depicted by the videotape." Id.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011).

To avoid summary judgment based on qualified immunity, a plaintiff must show both that the defendant violated a constitutional right and that the right was already clearly established -- given the circumstances -- when defendant acted. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). A federal right is "clearly established" when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." al-Kidd, 131 S. Ct. at 2083 (quotations omitted). "We do not require a case

directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Mullinex v. Luna, 136 S. Ct. 305, 308 (2015) (emphasis added). In determining whether the law is clearly established, courts must consider "whether the violative nature of particular conduct is clearly established . . . in the light of the specific context of the case, not as a broad general proposition." Id. (emphasis in original).

False Arrest Claims:

Broadly speaking, a warrantless arrest made without probable cause violates the Fourth Amendment. See Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). An officer has probable cause to arrest when, "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [accused] had committed or was committing an offense." Beck v. Ohio, 85 S. Ct. 223, 225 (1964).

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 103 S. Ct. 213, 243 n.13 (1983). Thus, "innocent behavior will frequently provide the basis for a showing of probable cause." Id. "The Constitution does not guarantee

6

that only the guilty will be arrested." Baker v. McCollan, 99 S. Ct. 2689, 2695 (1979); see also Pierson v. Ray, 87 S. Ct. 1213, 1218 (1967) ("a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved.").

"To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010). In determining whether arguable probable cause exists, the issue is not whether the plaintiff was in fact guilty of the charged offense, but rather, whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff[s]." Id.; see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557-58 (11th Cir. 1993).

The reasonable-officer standard is an objective one; we do not consider the officer's subjective intent. Brown, 608 F.3d at 735. Thus, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 125 S. Ct. 588, 594 (2004). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown, 608 F.3d at 735.

a. Schaefer

Viewing the facts in the light most favorable to Schaefer, probable cause existed to arrest Schaefer for trespass. Under Florida law, a person commits trespass when he, in pertinent part, remains on property after being notified by actual communication that his remaining on the property was forbidden. Fla. Stat. § 810.09(1)(a)(1).

Schaefer was told repeatedly by Defendant Officers to leave the bar. Instead of complying with Defendant Officers' orders, however, Schaefer objected to leaving and, at one point, sought to return to the bar area. At the moment Defendant Officers placed Schaefer under arrest, Schaefer remained standing in the "doorjamb" area of the bar. In the light of these facts, Defendant Officers had probable cause -- and certainly arguable probable cause -- to arrest Schaefer for remaining illegally on property, after receiving notice to depart, in violation of Florida law.

The district court reasoned that, because Schaefer was outside when he was arrested, he was not remaining willfully inside the bar and, thus, no arguable probable case existed to arrest him for trespass. As an initial matter, the district court clearly erred in finding that Schaefer was outside the bar when he was arrested. Schaefer admitted that he was in fact standing in the "doorjamb" or

8

"entryway" of the bar when Defendant Officers first told him he was under arrest and attempted to handcuff him.  That Schaefer was several feet outside the bar when he was chased down and ultimately handcuffed has no bearing on whether probable cause existed to arrest Schaefer for an earlier completed trespass. Moreover, whether Schaefer was in fact guilty of trespass is not pertinent to our qualified immunity analysis.  See, e.g., Post, 7 F.3d at 1557-58.  Given all the facts and circumstances, objective officers in Defendant Officers' place could have believed reasonably -- when they told Schaefer that he was under arrest -- that Schaefer was remaining willfully in an area where he had been told to leave.

Probable cause also existed to arrest Schaefer for resisting an officer without violence, in violation of Fla. Stat. § 843.02.  To prove a violation of section 843.02, the state must show two things: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of the lawful duty."  H.A.P. v. State of Fla., 834 So. 2d 237, 238 (Fla. Dist. Ct. App. 2002).  The statute prohibits only "conduct that physically obstructs or opposes an officer in the performance of lawful duties": speech alone is not enough.  Wilkerson v. State of Fla., 556 So. 2d 453, 455-56 (Fla. Dist. Ct. App. 1990).

The parties do not dispute that Defendant Officers were engaged in the execution of a legal duty when they attempted to arrest Schaefer.  And Schaefer's

9

conduct -- coming out of his jacket, running several feet away from Defendant Officers, and struggling as Defendant Officers attempted to handcuff him -- clearly physically impeded Defendant Officers' efforts to carry out that duty.  Thus, probable cause existed to arrest Schaefer for resisting.

Even accepting Schaefer's version of the story as true -- that he merely (unintentionally) "slipped out of [his] sport coat" and was not attempting to flee -- Schaefer's subjective intent is not pertinent to our determination of whether a reasonable officer under the circumstances could have concluded that probable cause existed to arrest.  See Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007) ("no police officer can truly know another person's subjective intent" and, thus, an arresting officer needs no specific evidence of a suspect's intent before determining that probable cause exists to support an arrest).  Moreover, that Schaefer slipped out of Defendant Officers' grasp and ran several feet is some evidence that Schaefer in fact intended to avoid arrest.  See id. ("'Acts indicate the intention' is an old maxim" (citation and alteration omitted)).

Construing the evidence in the light most favorable to Schaefer, Defendant Officers are entitled to qualified immunity from Schaefer's claims for false arrest.

10

b.  Bass

Probable cause also existed to arrest Bass for battery on a licensed security officer, in violation of Fla. Stat. § 784.07(2).  Under Florida law, "any intentional touching, no matter how slight, is sufficient to constitute" a "battery" for purposes of section 784.07.  State v. Hearns, 961 So. 2d 211, 218-19 (Fla. 2007).

The surveillance video shows clearly Bass attempting to approach the spot where Schaefer was being handcuffed and Bass being pushed back repeatedly by two different security officers.  The video also shows Bass using his hands and body to move the security officers' arms away from him.  This "intentional touching" was sufficient to establish probable cause to arrest Bass for battery.  See id.  That Officer Negron did not see -- and that the surveillance video does not show conclusively -- Bass shoving the female security officer and causing her to stumble is immaterial.  Officer Negron is entitled to qualified immunity from Bass's false arrest claim.[3]

---

[3] Because probable cause existed to arrest Bass for battery on a licensed security officer, we need not decide whether probable cause (or arguable probable cause) also existed to arrest Bass for resisting an officer without violence or for misuse of the 911 system.

c. <u>Jones</u>

Viewing the evidence in the light most favorable to Jones, arguable probable cause existed to arrest Jones for resisting without violence, in violation of Fla. Stat. § 843.02.  The surveillance video shows Jones -- only seconds after Schaefer was tackled to the ground -- advance toward the police near the spot where Schaefer is being handcuffed and Jones being pushed back by a security officer.  Jones took a few steps back from the security officer, took out his cell phone, and advanced again toward the security officer, holding up his cell phone.  The security officer pushed Jones back a second time, and Jones appears to use his arm to move the security officer's arms away.  Jones then walked to the other side of where Schaefer was being handcuffed.  Jones stood about ten to fifteen feet from Schaefer, where Jones continued to record the events on his cell phone.  A second security officer then stepped directly in front of Jones, blocking Jones from advancing further toward Schaefer.  The security officer stayed immediately in front of Jones and moved with Jones as Jones moved from side-to-side to avoid the officer's block.  As Officer Negron stepped forward from where Schaefer had just been handcuffed, Jones moved over, close to Officer Negron.  As Jones and Officer Negron stood face-to-face only a couple of feet apart, Officer Negron sprayed Jones with pepper spray.  Although Jones testified that the security officer

12

(not Officer Negron) had been "just standing there, like, you need to stay back," nothing evidences that Jones was instructed verbally to leave the area.

Given these circumstances, an objective officer could easily have perceived Jones's continued presence close to the spot where officers were still attempting to restrain Schaefer -- particularly given that Jones and his movements were drawing the full attention of at least one security officer -- as uncooperative and impeding and obstructing the officers' ability to carry out that legal duty. See Wilkerson, 556 So. 2d at 456 (affirming conviction for resisting without violence in part because officer considered woman's continued physical presence near area where officers were making arrests and were searching suspects for weapons as "obstructing or impeding him in the performance of his duty."). Neither Jones's subjective intent nor his ultimate guilt or innocence of the offense is material to our determination about whether arguable probable cause existed to support the arrest. See Jordan, 487 F.3d at 1355; Post, 7 F.3d at 1557-58. Because arguable probable cause existed to arrest Jones for resisting without violence, Officer Negron is entitled to qualified immunity from Jones's claim for false arrest.

Excessive Force Claims:

Although we conclude that Plaintiffs were arrested lawfully (or, at least, not clearly in violation of federal law), we must address whether the force used was excessive.  "Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand."  Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (quotation omitted).  And we have "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Lee, 284 F.3d at 1197.  In deciding the merits of a claim for excessive force, we must determine whether -- given all the facts and circumstances of a particular case -- the force used was "reasonable" under the Fourth Amendment.  Graham v. Connor, 109 S. Ct. 1865, 1971-72 (1989).

"In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate."  McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009).  "[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the

14

need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." Lee, 284 F.3d at 1198 (citing Graham, 109 S. Ct. at 1872).

We stress that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 109 S. Ct. at 1872. What could the situation have been perceived to be by a reasonable officer, even if the reasonable perception was mistaken in the ultimate sense. And we must allow "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. "We are loath to second-guess the decisions made by police officers in the field." Vaughn v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003).

### a. Schaefer

Schaefer alleges that -- after he was handcuffed face-down on the sidewalk and within Defendant Officers' full control -- he was Tased, pepper sprayed, and punched. Schaefer contends that, when the force was used, he was offering no resistance and making no attempts to roll over or to flee.

15

From the surveillance video it seems that, after Schaefer was handcuffed on the ground and appeared to be within Officer Michael's control, Officer Michael struck Schaefer. Because nothing in the surveillance video contradicts clearly Schaefer's testimony that Defendant Officers also pepper sprayed and Tased Schaefer after he was handcuffed, we -- for now, at least -- accept as true Schaefer's version of the facts. Cf. Scott, 127 S. Ct. at 1776.

Viewed in the light most favorable to Schaefer, the evidence demonstrates that Defendant Officers violated Schaefer's constitutional rights that were already clearly established when Defendant Officers acted.[4] By 2012, our precedent was clear -- such that all reasonable officers must have understood -- that Defendant Officers' use of force against Schaefer after Schaefer was handcuffed for a non-violent offense and if Schaefer was neither resisting nor attempting to flee, and posed no threat to the safety of the officers or to others, constituted excessive force in violation of the Fourth Amendment. See Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (officer's single punch to the stomach of a non-resisting, handcuffed arrestee constituted excessive force); Vinyard, 311 F.3d at 1349 (grabbing forcibly plaintiff's arm and using pepper spray constituted excessive force when plaintiff was arrested for a minor offense, was handcuffed, secured in

---

[4] We conclude only that Defendant Officers are unentitled to qualified immunity at this stage; we do not rule out that qualified immunity might be granted properly later in the proceedings as the factual situation is clarified.

16

the back of a patrol car, and posed no threat); Lee, 284 F.3d at 1199 (slamming

plaintiff's head onto the trunk of a car "after she was arrested, handcuffed, and

completely secured, and after any danger to the arresting officer as well as any risk

of flight had passed" constituted excessive force).  At this time, Defendant Officers

are unentitled to qualified immunity from Schaefer's claims for excessive force

after Schaefer was handcuffed.[5]


   b.  Bass


   The evidence, viewed in the light most favorable to Bass, demonstrates that

Bass was talking on his phone, several yards away from the scene of Schaefer's

arrest, when he was approached and surrounded by four officers, including Officer

Negron.  Despite the officers' approach, Bass continued to talk on his phone.

Officer Negron then sprayed Bass in the face with pepper spray.  Bass fell

immediately to the ground and Officer Negron sprayed Bass in the face again as

Bass was being handcuffed.  Bass contends he was not resisting when Officer

---

[5] The district court also concluded (based on Defendant Officers' testimony and incident reports) that Defendant Officers used excessive force during their initial attempt to handcuff Schaefer. Schaefer's complaint, however, alleges only the use of excessive force after he was in "the full care, custody and control" of Defendant Officers, "including being handcuffed behind his back." Because Schaefer alleged no claim of excessive force based on his initial encounter with Defendant Officers, the district court erred in considering Defendant Officers' initial use of force as a separate claim.

Negron used pepper spray.  The surveillance video confirms that Bass offered no forceful resistance directly before being sprayed.

But given all the circumstances, Officer Negron's use of pepper spray constituted no excessive force in violation of Bass's Fourth Amendment rights. Officer Negron certainly violated no constitutional right that was already clearly established when Officer Negron acted.  We have said that the use of pepper spray is reasonable when a person refuses to comply with police requests (passive resistance is resistance) and that "pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee."  Vinyard, 311 F.3d at 1348. Pepper spray is particularly appropriate and reasonable when officers are faced with "potentially violent suspects, especially those suspects who have already assaulted another person and remain armed."  McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1245 (11th Cir. 2003).

A reasonable officer under these circumstances could have believed that the use of pepper spray to assist in arresting Bass was a necessary and a reasonably proportionate use of force.  Bass was being arrested for battery on a security officer (no minor offense).  Although nothing evidences that Bass's battery resulted in serious injuries to the officers, Bass had shown himself -- less than a minute earlier -- uncooperative and willing to use physical force in the face of police authority. And Bass testified that he was still "very emotional" while speaking with the 911

18

operator.  An objectively reasonable officer in Officer Negron's position could have believed that Bass posed a physical threat to the safety of the arresting officers and that pepper spray was an acceptable way to avoid a more serious physical confrontation between the officers and Bass: protecting the safety of the arrestee as well as that of the officers.

In the light of these circumstances, Officer Negron's use of pepper spray constituted no Fourth Amendment violation.  Moreover, it was not established clearly -- such that the constitutional issue was "beyond debate" as of 2012 -- that the use of pepper spray against an unrestrained, seemingly able-bodied suspect during the course of a lawful arrest for a battery (that had just taken place) on an officer constituted excessive force.  Officer Negron is entitled to qualified immunity from Bass's claim for excessive force.[6]

---

[6] The district court's reliance on our opinion in Fils v. City of Adventura, 647 F.3d 1272 (11th Cir. 2011), is misplaced.  Fils involved the use of a Taser -- not pepper spray -- against a non-hostile, non-violent plaintiff who had disobeyed no instructions.  Id. at 1288-90.  Fils is significantly different from this case and, thus, would put no reasonable officer in Officer Negron's position on clear notice that what he was doing on the night in question violated an already established constitutional right.

We note that the Court in Fils looked at cases involving pepper spray (and other forms of non-lethal force) in determining whether the use of a Taser violated the Fourth Amendment.  There, the Court explained that it saw "no meaningful distinction" between the different forms of non-lethal force under the circumstances of that case: for example, if one could not lawfully use pepper spray, one could not lawfully use a Taser.  It is open to argument whether the use of a Taser constitutes a greater amount of force than the use of pepper spray; we are unpersuaded that cases involving Tasers can, in themselves, serve to establish clearly the law about whether the use of pepper spray constitutes excessive force, even if under similar circumstances.  Cf. Bryan v. MacPherson, 630 F.3d 805, 825 (7th Cir. 2010) ("The physiological effects, the high levels of pain, and foreseeable risk of physical injury lead us to conclude that the [Taser] X26 and similar

c. Jones

Officer Negron is also entitled to qualified immunity from Jones's claim for excessive force.  Examining the factors set forth in Graham, we accept that Jones was arrested for an offense of minor severity (resisting without violence),[7] posed little physical threat to the safety of the officers or to others, and had made no attempt to flee.  Thus, although Officer Negron was entitled "to use some degree of physical coercion" in arresting Jones, the circumstances justified only a proportionately small amount of force.  See Lee, 284 F.3d at 1197.

We cannot say, however, that Officer Negron's single burst of pepper spray was constitutionally unreasonable in the light of the circumstances.  Moreover, it was far from established clearly when Officer Negron acted -- so that every reasonable officer would not have understood -- that the use of pepper spray constituted excessive force in violation of Jones's Fourth Amendment rights, given the circumstances.

---

devices are a greater intrusion than other non-lethal methods of force we have confronted" including, among other things, pepper spray).

[7] See Vinyard, 311 F.3d at 1347 (describing obstruction of a law enforcement officer as a minor offense).

20

We have said that "as a means of imposing force, pepper spray is generally of limited intrusiveness" and is "designed to disable a suspect without causing permanent physical injury." Vinyard, 311 F.3d at 1348. And we have found no Supreme Court, Eleventh Circuit, or Florida Supreme Court decision establishing that the use of pepper spray alone during the course of an otherwise lawful arrest constitutes excessive force. Cf. Brown, 608 F.3d at 739 (officer's use of pepper spray, combined with throwing plaintiff out of her car and slamming plaintiff on the ground, constituted excessive force where plaintiff was arrested for a minor offense, posed no threat to the safety of the officer or to others, was not attempting to flee, and had otherwise "submitted" to the officer's authority and "communicated her willingness to be arrested"); Reese v. Herbert, 527 F.3d 1253 (11th Cir. 2008) (denying qualified immunity to officers who pepper-sprayed, kicked, and beat arrestee who was lying face-down on the ground when arrestee was suspected only of a minor offense, posed no threat to the officers, and was not actively evading arrest).

In the light of the totality of the circumstances in this case -- including that Officer Negron and Jones were surrounded at night by an agitated crowd, many of whom had been drinking, and at least one of whom (Bass) who had been acting in a threatening and confrontational manner toward the officers -- it was not "beyond debate" that using pepper spray against Jones was then such a disproportionate use

21

of force that it violated Jones's Fourth Amendment rights.  Officer Negron violated no clearly established constitutional right; he is entitled to qualified immunity from Jones's claim for excessive force.

In sum, we affirm the district court only on the denial of qualified immunity to Defendant Officers from Schaefer's claim for excessive force used <u>after</u> Schaefer was handcuffed.  Defendant Officers are entitled to qualified immunity from Plaintiffs' remaining claims: claims for false arrest and Bass and Jones's claims for excessive force.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.